## UNITED STATES v. YEOMAN–HENDERSON, Inc.

### No. 10445.

United States Court of Appeals
Seventh Circuit.

Jan. 17, 1952.

Eugene T. Devitt, G. R. Scheib, John D. O'Connor, and Amos J. Coffman, all of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Irwin N. Cohen and Robert J. Downing, Assts. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from judgment entered upon verdicts of a jury finding each of the defendants guilty of willfully and knowing-

ly attempting to defeat and evade a large part of the income taxes due and owing by each of them for the years 1944, 1945 and 1946. Defendants' motions for a judgment of acquittal at the close of the plaintiff's case and at the close of all of the evidence were respectively denied, as were the motions for a new trial. The court imposed a general sentence upon defendant Roy R. Yeoman of imprisonment for a term of one year and a day, and a fine of $100 upon the corporate defendant.

Prior to and during the years 1944, 1945 and 1946, the defendant Roy R. Yeoman (hereinafter called "Yeoman"), as president and treasurer of Yeoman-Henderson, Inc. (hereinafter called "company"), operated a jewelry store in Waukegan, Illinois, owned by the company. Although his wife, Marion, was the secretary of the company, Yeoman personally maintained the books and records of the company, preparing its income tax returns as well as his own. The company was in fact a one-man corporation.

The income tax returns filed by Yeoman for himself and for the company showed net income and taxes due as follows:

| Year | Net income of Roy R. Yeoman | Tax due by Roy R. Yeoman | Net Income of Company | Tax due by Company |
|---|---|---|---|---|
| 1944 | $2,160.00 | $133.00 | $1,575.35 | $357.44 |
| 1945 | 2,160.00 | 133.00 | 1,222.08 | 364.63 |
| 1946 | 2,160.00 | 192.00 | (1,058.88)* | 0.00 |

(*Indicates net loss for year 1946)

Defendants contend that the evidence does not sustain the verdicts and judgment, the principal attack being leveled at a net worth statement of defendant Yeoman. Error is also claimed in admitting evidence of the purchase by Yeoman in 1941 of an automobile which he placed in the name of a third party without the latter's knowledge or consent.

Revenue Agent O'Hanlon testified that Yeoman informed him that during the years in question he had no other source of income than his jewelry business; that all deposits in his personal checking account, in his savings account, and in his wife's checking account at the First National Bank at Waukegan represented receipts from his jewelry business.

The evidence disclosed total deposits in Yeoman's checking account as follows: 1944, $26,976.91; 1945, $48,778.19; and 1946, $50,591.91. In 1944 the sum of $1,861.-00 was deposited in Yeoman's savings account, and $2,613.30 in Marion Yeoman's checking account; in 1945, $1,830.00 and in 1946, $3,235.00 was deposited in her account. None of the deposits listed in this paragraph was entered in the books and records of the company.

Commencing in 1945 Yeoman maintained a second accounts receivable book, in which he entered company sales. Practically all of such sales were not recorded in the regular corporation accounts receivable, nor were such sales reported in computing the corporation income tax return. Yeoman's excuse for maintaining the second accounts receivable book was that the rental of his store building was based on a percentage of gross sales, and that he considered the rental on that basis to be exorbitant.

Sales of $5,247.22 for 1945 were listed in this second book, but only $24.25 thereof was included by Yeoman in the company's 1945 income tax return. Sales of $11,371.-43 were listed for 1946, but only $75.50 were included in the company's 1946 income tax return.

Revenue Agent Willis computed from the exhibits and testimony in evidence the company's tax liability was $14,787.67 for 1944, $20,896.48 for 1945, and $1,517.37 for 1946. He likewise computed Yeoman's tax liability was $440.00 for 1944, $2,963.81 for 1945, and $1,161.79 for 1946.

In a memorandum prepared by Yeoman he admitted expending $7,976.10 in 1944 and $1,276.19 in 1945 in remodeling and repair of his residence. Yeoman also told Agent O'Hanlon that in 1944, 1945, and 1946 his living expenses were approximately $3,000 a year and that obviously he could not live on the $2,160 salary which he reported in his income tax returns. On December 14, 1948, Yeoman gave Agent O'Hanlon a net worth statement prepared by Yeoman which indicated his net worth as of December 31, 1941, through 1947. The agent testified he had absolutely noth-

ing to do with the preparation of this net worth statement.

The defendants called two witnesses: McEwen and Lynch. McEwen told of a business deal where he turned over to Yeoman $10,000 in cash in 1945, and $5,000 additional in 1946, and that Yeoman put this money in his safe; that in 1948 Yeoman gave him his bank book and told him to go to the bank and withdraw the $15,000 from Yeoman's savings account, which he did. But Agent O'Hanlon testified that he had two conversations with McEwen in 1948 in which he asked for all records of his transactions with Yeoman, but that nothing was mentioned about the alleged $15,000 transaction.

Lynch, a certified public accountant, questioned many of the results reached and computations made by the agents who testified for the government, but he did admit that the company owed a tax to the United States in excess of the amount of tax shown on the company's income tax returns for 1944, 1945 and 1946.

Lynch testified that the statement of Yeoman's net worth introduced into evidence over defendants' objection was a hybrid of a cash basis and an accrual basis, and was inaccurate. Claiming the net worth statement was proved to be untrustworthy, defendants insist that under the rule laid down by this court in United States v. Fenwick, 7 Cir., 177 F.2d 488, the judgment of conviction must be reversed.

▇ When a motion for a judgment of acquittal is made, the sole duty of the trial judge is to determine whether substantial evidence, taken in the light most favorable to the government, tends to show the defendant is guilty beyond a reasonable doubt. Bell v. United States, 4 Cir., 185 F.2d 302, 310. The rule is well stated in Curley v. United States, 81 U.S.App.D.C. 389, 160 F. 2d 229, 232: "The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reason-

able mind might fairly conclude guilt beyond a reasonable doubt. * * *"

In considering the evidence most favorable to the verdict and such reasonable inferences as the jury may have drawn therefrom, United States v. O'Brien, 7 Cir., 174 F.2d 341, we think the trial court properly denied defendants' motions for a judgment of acquittal.

▇ Nor does our decision in United States v. Fenwick, supra, justify a judgment of reversal in this case. Any general language in the opinion of that case must be considered in light of the facts there involved. In the Fenwick case, there was no proof that the taxpayer had not previously accumulated assets. The government agent admitted he had not inquired of defendant whether he had had cash on hand, accumulated from earnings from his business in the years prior to the period then under examination, and the United States Attorney stated that there might have been other assets. The Fenwick opinion pointed out that the evidence on the trial fell short of excluding all possible available sources of taxable income from which the increased net worth and the excess expenditures could have been derived. Contrasting the inadmissibility of the net worth statement in the Fenwick case, where it was the result of computation by the agents, in the case at bar the net worth statement was prepared by Yeoman himself, without the assistance of a revenue agent, and while it probably was inaccurate in some respects, it cannot be considered as an extra-judicial admission, unsupported by other evidence, and was in fact admissible into evidence as an admission against interest.

▇ The crime denounced by Sec. 145(b), Internal Revenue Code, 26 U.S.C.A. § 145, is complete when the taxpayer willfully and knowingly files a false return with intent to defeat or evade any part of the tax due to the United States. Myres v. United States, 8 Cir., 174 F.2d 329; Guzik v. United States, 7 Cir., 54 F.2d 618, 619, certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937. From the evidence in the record before us, the jury was entitled to

draw the inference that defendant Yeoman knew that his income tax returns and the returns for the company for the years 1944, 1945 and 1946 were false, and that when he filed them he did so with intent to defeat or evade a part of the income tax due by him and by his company to the United States for those years.

 Standing by itself, the fact that Yeoman in 1941 purchased a Nash automobile and registered the title thereof in the name of Edward P. Tiernan without the latter's knowledge or consent would not be admissible as proof of an attempt by him to evade income taxes in the years 1944, 1945, and 1946. However, in the case at bar this evidence tied up with other relevant and material testimony.

Defendant Yeoman was under an obligation to keep correct books and records. United States v. Hornstein, 7 Cir., 176 F.2d 217. In the notes payable account of the company for 1944, four items aggregating $9,555, as "Loans from Bank," were listed; also under "Money Received from E. P. Tiernan" were the items of January 10, 1944, $3,250, and October 31, 1944, $1,250. The company records maintained by Yeoman also disclosed four items aggregating $3,000 as "Money Repaid to E. P. Tiernan," and three items aggregating $3,536.51 as "Paid bank on Note." The vice president of the only bank with which Yeoman did business testified the bank had not made any loans during 1944 to either Yeoman or the company. E. P. Tiernan testified that neither in 1944, nor any other time, did he make any loans or payments of any kind to or receive any sums of money as loan repayments from either defendant.

In Yeoman's statement he listed an automobile as an asset as of December 31, 1941. Undoubtedly this was the Nash automobile he traded in 1946 on a new Pontiac, paying the difference by check. Tiernan testified that he never authorized Yeoman to have the title of the Nash car taken in his name, nor did he advance any funds toward the purchase of the car. We think the evidence was admissible, in view of the apparent efforts Yeoman had made to have the books of the company reflect various business transactions, none of which, according to Tiernan's testimony, had ever transpired.

Finding no error in the conduct of the trial, the judgment of conviction is

Affirmed.