Russell HOBBS and Fred G. Hames,
Appellants,

v.

STATE of Alaska, Appellee.

No. 63.

Supreme Court of Alaska.

June 23, 1961.

Wendell P. Kay, Anchorage, for appellants.

George N. Hayes, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The defendants below, Hobbs and Hames, were tried by jury in the superior court and convicted on two counts of felonious assault with a dangerous weapon. In the first count it was charged that the weapon used was a tire wrench and in the second count, a pistol.[1]

1. Count II of the indictment charged:
"That on or about the 9th day of March, 1959, at or near Anchorage, Alaska, Third Judicial Division [now District], District [now state] of Alaska, Russell Hobbs and Fred J. Hames being then and there armed with a dangerous weapon, to-wit: a pistol the type and

. .The defendant Hobbs alone has appealed from the judgment of conviction. His appeal is only as to the second count. He lists as his first specification of error the refusal of the trial court to grant his motion for a judgment of acquittal, contending that the verdict rests upon insufficient evidence. Specifically he argues that the state failed to produce any evidence, direct or circumstantial, from which the jury could have reasonably found that the pistol was loaded.

■ Having in mind the rule that on motion for judgment of acquittal, the evidence must be viewed in the light most favorable to the state,[2] we have studied the record and find that evidence to be as follows:

On Friday night, March 6, 1959, and stretching on into the early hours of the next day, one Harold Hansen was a customer at the Pink Garter night club near Anchorage, Alaska, where he was buying champagne and otherwise entertaining himself and those present. By representing himself to be in the construction business, he managed to cash some five or six fraudulent checks, totalling about $600, which he had drawn against an imaginary account in one of the local banks. The checks were taken in trade by the defendant Hobbs who was the Pink Garter bartender in charge at the time. The other defendant, Fred G. Hames, was also connected with the Pink Garter as co-owner and operator. It was he who discovered the checks to be worthless.

In the forenoon of Monday, March 9, 1959, Harold Hansen was drinking beer at the bar in the Stagecoach night club located within the City of Anchorage. At about 10:30 or 11:00 o'clock a. m. the defendant Hobbs entered the Stagecoach and apparently struck Hansen a hard blow on the back of his head with a tire wrench, which the defendant was holding in his hand. It dazed the victim and partly knocked him off the stool on which he was sitting. Hobbs then dragged Hansen through a corridor into the cafe part of the night club, where Hames was waiting.

Inside the cafe both of the defendants began to verbally belabor Hansen about the checks and urged him to telephone persons from whom he might obtain money with which to make good the checks. Hansen made several such telephone calls, or at least pretended to make them and, when they proved futile, Hobbs used the tire wrench upon him again. During all of this time in the cafe, Hames was standing nearby and was holding a pistol in his hand, pointing it at Hansen. When it became apparent to the defendants that Hansen would not be able to produce any money, Hobbs left the cafe. As he was leaving he remarked to Hames, "Don't let him [meaning Hansen] make a move, if he makes a move —shoot him". After Hobbs left, Hames called the police.

■ In support of his claim that the trial court erred in refusing to grant judgment of acquittal, the defendant Hobbs relies principally upon Randall v. United States, 9 Cir., 1954, 215 F.2d 587.[3] In that case the Court of Appeals for the Ninth Circuit held that the record disclosed facts

---

caliber of which is unknown to the Grand Jurors, did wilfully, unlawfully and feloniously assault Harold Hansen with said dangerous weapon by pointing the said pistol at him in a menacing manner and threatening the said Harold Hansen."

2. United States v. Yeoman-Henderson, Inc., 7 Cir., 1952, 193 F.2d 867, 869. To the same effect on motion for directed verdict, see Coppersmith v. United States, 4 Cir., 1949, 176 F.2d 353.

3. The jury was instructed, as requested by the defendants, that an unloaded pistol is not a dangerous weapon within the meaning of § 65-4-22, A.C.L.A.1949, when there is no present ability to use it as a bludgeon. Jackson v. United States, 9 Cir., 1900, 102 F. 473, 484 and Randall v. United States, 9 Cir., 1954, 215 F.2d 587, 589 are good authority for the instruction given.

Section 65-4-22, A.C.L.A.1949, states, "That whoever, being armed with a dangerous weapon, shall assault another with such weapon, shall be punished * * *."

and circumstances from which the jury was authorized to infer that a firearm used in an assault was loaded.[4] However, the court did not purport to lay down the only facts from which it could reasonably be inferred that a firearm was loaded; nor did it modify the earlier case of Jackson v. United States,[5] in which the appellate court held:

"Whether it [a firearm involved in an assault] was loaded or not was a question of fact, to be determined by the jury. The testimony was circumstantial. The jury had to infer the fact from all the testimony and the surrounding circumstances."

Further, the Randall opinion cited with approval the Arizona case of Territory v. Gomez, 1912, 14 Ariz. 139, 125 P. 702, 42 L.R.A.,N.S., 975, wherein it was held error for the trial court not to have submitted to the jury the question of whether a gun was loaded, even though the only evidence proffered by the prosecution on that issue was that the accused cocked and pointed a pistol in an angry and threatening manner at the prosecuting witness and exclaimed repeatedly, "Look out! Look out!" The Arizona court was persuaded by the following reasoning of the Supreme Court of Montana in an earlier case in point:[6]

"Although there is a division of views in the decided cases, we think that the better opinion is that, if a firearm is the alleged deadly [dangerous] weapon,—a weapon the only ordinary use of which is by its being loaded,—if it be pointed at the complainant in a threatening manner, if defendant make threats to shoot, if the circumstances are such as would exist if one were using a loaded gun,—in short, that if all the elements of the offense be made out, as required by the criminal laws and procedure, except the direct, we may say visual, proof that the weapon is loaded,—under these circumstances a direction to the jury to acquit is error; and that the fact that the gun was unloaded (if such be the fact) is a matter of defense. Such view seems to be held by the weight of authority, and such is the only practical view in the enforcement of the statute in reference to assaults with deadly weapons of this character."

■ We consider the reasoning and statement of the law as set forth in the foregoing quotation from the Herron case to be sound and will follow them in the instant case, because they clearly articulate the basis for the decisions in the Jackson and Randall cases.[7] Accordingly, we hold that the trial court properly sent this case to the jury.

■ In further support of his first specification of error, defendant Hobbs posits that there was a "total lack of evidence of a criminal intent to do great bodily harm". He maintains that it is clear from the evidence that the intent of his co-defendant Hames was not to harm Hansen, but only to effect a valid arrest. We disagree. What is clear from the record is that the evidence was at least conflicting on this point. There was evidence from which a jury could have reasonably concluded that the pistol was being used coercively in an attempt to force Hansen to make good on the checks, and that any intent which there

4. The facts and circumstances listed by the court in the Randall case, cited in note 3 supra, from which the inference could be made were these:
    (1) the defendant was drinking and was angry;
    (2) his acts and conduct at the time he drew the gun and threatened the bartender;
    (3) the reaction of the bystanders and the bartender at the time;

    (4) the practices and customs of the community in this regard;
    (5) the fact that the clip which carries the cartridges was in the gun.

5. Note 3 supra at page 485, of 102 F.

6. State v. Herron, 1892, 12 Mont. 230, 29 P. 819, 821.

7. Fully cited in note 3 supra.

might have been to make an arrest was preceded by the unlawful intent required as an element in the crime of assault.

■ Finally, the defendant specifies as error the refusal of the trial court to give a requested instruction. The jury was instructed that "under the laws of Alaska, a private citizen has the right to arrest another for a felony of which he has personal direct knowledge".[8] The defendant had requested that the following additional sentence be added to the instruction as given:

"In making such an arrest, the private citizen may use such means as appear to be reasonably necessary and proper under all the circumstances."

The foregoing quoted language was obviously suggested by Section 66–5–27, Alaska Compiled Laws Annotated 1949, which provides: "That if, after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary and proper means to effect the arrest". Since the record does not disclose any evidence of an attempt by Hansen to flee or resist, the requested instruction was properly denied. However, by virtue of section 66–5–25, Alaska Compiled Laws Annotated 1949, relating to limitation on restraint in making an arrest[9] the court might properly have instructed the jury that "a person so arrested by a private citizen may not be subjected to any more restraint than is necessary and proper for his arrest". The question then arises whether the court, after refusing to give the requested instruction, committed reversible error by failing of its own motion to instruct the jury as to the amount of restraint permitted to be used by a citizen making an arrest.

■ We have carefully reviewed and considered all the evidence contained in the record of this case, and conclude that the failure of the court to instruct on the amount of restraint permitted to be used in effecting an arrest was not reversible error, because any possibility that the result would have been different if the proper instruction had been given is very remote. The instruction as actually given specifically called the jury's attention to the defense of justification for the assault intrinsic in the making of an arrest. Furthermore, the trial court instructed the jury fully as to the elements of the crime of assault, one of those elements being "that such assault was not lawful or justified"; and the court also instructed the jury "that the burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged".

Had the jury believed the testimony of the defendant Hobbs that the pistol was used only for the purpose of effecting a valid arrest,[10] a reasonable doubt would have been raised as to one of the "elements" and it would have been the jury's duty to acquit. On the basis of all the evidence, the verdict indicates to us that the jury did not believe that Hobbs entertained

8. See §§ 66–5–22, 66–5–30, 66–5–37, A.C. L.A.1949.

9. Section 66–5–25, A.C.L.A.1949 provides: "That the defendant is not to be subjected to any more restraint than is necessary and proper for his arrest and detention."

10. Concerning the use of the pistol by Hames at the Stagecoach cafe, Hobbs had testified on cross-examination as follows:
"Q. Mr. Hobbs, did you not feel that you might be needed to keep Mr. Hanson there until the law came? A. No, sir, I didn't.
"Q. And why didn't you feel that your presence was needed to keep Mr. Hanson there? A. Because I figured Mr. Hames's man enough to hold him there.
"Q. With a gun? A. With a gun, with no shells in it, yes.
"Q. You mean a man in that condition, whom you had to lead down the hall, help to sit down—needed to have a man cover him with a gun to keep him there? A. An empty gun? You don't know what a drunk's [meaning Hansen] going to do * * *."

an intent to arrest Hansen before or during the unjustified assault upon the latter with the pistol, and that intent to arrest arose as an afterthought.

The judgment is affirmed.