Ivan Steven JUNEBY, Appellant,

v.

STATE of Alaska, Appellee.

No. 5606.

Court of Appeals of Alaska.

June 3, 1983.

As Amended June 20, 1983.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Anchorage, Barry J. Stern, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and MOORE, Superior Court Judge.*

## OPINION ON REHEARING

BRYNER, Chief Judge.

In the present case, Ivan Steven Juneby appealed a maximum, twenty-year sentence that he received upon conviction of first-degree sexual assault. Since Juneby had previously been convicted of one felony, his sentence was governed by the provisions of Alaska's presumptive sentencing statutes, AS 12.55.125 and AS 12.55.155. After considering the sentencing memoranda filed on behalf of Juneby and the state, we concluded that the sentencing court had failed to comply with the requirements of the presumptive sentencing statutes in several different respects; we therefore ordered that Juneby be resentenced. *See Juneby v. State,* 641 P.2d 823 (Alaska App.1982).

Following issuance of our opinion in *Juneby,* the State of Alaska filed a timely petition for rehearing. We granted the petition in order to allow both parties to submit additional briefs addressing various issues covered by our opinion. Having considered the briefs submitted on rehearing, we conclude that our original opinion in *Juneby* must be modified to a limited extent. In all other respects, we reaffirm the original opinion.

We consider first the issues raised by the state as to which we believe modification is necessary.

## I. DUAL BURDEN OF PROOF WITH RESPECT TO AGGRAVATING AND MITIGATING FACTORS

The state has requested that we reconsider the language of our original opinion establishing a "dual burden" on the prosecution with respect to proof of aggravating factors. In the *Juneby* opinion, we stated that mere proof of an aggravating or mitigating factor, pursuant to subsection (c) or (d) of AS 12.55.155, does not necessarily require upward or downward adjustment of a presumptive sentence. We went on to note that AS 12.55.155(f), which requires proof of aggravating and mitigating factors by clear and convincing evidence, establishes a dual burden on the parties seeking to prove an aggravating or mitigating factor. We held, in relevant part:

> The burden imposed upon parties to establish aggravating and mitigating circumstances may be likened to the procedural requirements governing probation revocation hearings. Revocation hear-

* Moore, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

ings involve two distinct phases: the first is to establish existence of a violation; the second is to determine if the violation actually warrants revocation of probation.... Similarly, in sentencing proceedings involving allegations of aggravating and mitigating circumstances, we believe that the provisions of AS 12.55.-155(f) require the party seeking to establish a factor to bear a dual burden. First, the party must prove to the court by clear and convincing evidence the existence of the alleged factor, and, second, the party must provide the court with sufficient reasons to justify a conclusion, by clear and convincing evidence, that the factor warrants deviation from the statutorily prescribed presumptive sentence. 641 P.2d at 838 n. 28. It is this specific language that the state challenges on rehearing.

We agree that our holding with respect to the existence of a dual burden must be modified. We continue to view the adjustment of a presumptive sentence for aggravating or mitigating factors as essentially involving a two-step process. The first step is comprised of establishing existence of specifically alleged factors. Under AS 12.-55.155(f) each alleged factor must be proved by clear and convincing evidence, and the proponent of the factor bears the burden of proof. Thus, the first step of the process is an evidentiary one, and it is at this stage that the burden of proof by clear and convincing evidence must be deemed to apply. The second step in adjusting presumptive sentences for aggravating or mitigating factors requires an evaluation by the court of factors that have been established, and a determination of the extent to which the factors will justify an upward or downward adjustment of the applicable presumptive term. This second step plainly involves a normative, or judgmental, element and not an evidentiary one.

As the state has correctly noted in its brief on rehearing, application of an evidentiary burden to the second step of the process is confusing and makes little sense. As we expressly held in our *Juneby* opinion:

Once a sentencing court has correctly interpreted and applied the presumptive sentencing provisions of the code and has properly determined the existence of aggravating or mitigating factors, then it will have the discretion to adjust the presumptive sentence for the particular offense .... In such instances the *Chaney* [*State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970)] criteria, as stated in AS 12.55.005(2)–(6), will be relevant to the sentencing court's determination of the amount by which the presumptive term should be adjusted.

641 P.2d at 835 (footnote omitted).

■ We believe that the portion of our original opinion imposing a dual burden of proof is inconsistent with the basic holding of the case concerning applicability of the *Chaney* criteria in determining the extent to which an aggravating or mitigating factor, once established, will justify adjustment of a presumptive term. To the extent that our original holding implied that the task of determining the amount by which a presumptive sentence should be increased upon proof of an aggravating factor is an evidentiary one for which the state is responsible, instead of a judicial one for which the court is responsible, the original opinion is modified.

■ A word of caution concerning the burden of proving aggravating and mitigating factors is nevertheless in order. As we have indicated, sentencing judges must determine the amount by which a presumptive term should be increased or decreased for aggravating or mitigating factors by applying the *Chaney* analysis to the particular factors established by the evidence. We believe it to be clear that, in making this determination, sentencing judges are required by the provisions of AS 12.55.155(f) to rely on only those facts pertaining to the alleged aggravating or mitigating factors that are supported by clear and convincing evidence. For example, in a case where the prosecution alleged physical injury as an aggravating factor, if the evidence clearly established the existence of minor injury to the victim and merely indicated the possibil-

ity of other, more serious injuries, then the sentencing court, in determining the extent to which the presumptive term should be increased, could not properly proceed on the assumption that the victim had sustained serious physical injuries; nor could the court, consistent with AS 12.55.155(f), shift to the defendant the burden of showing that the injuries suffered by the victim were not serious.

## II. MERGER OF SEPARATE AGGRAVATING OR MITIGATING FACTORS

The state also challenges the portion of our holding in *Juneby* in which we considered the appropriate procedure for cases where identical conduct by the accused constituted more than one aggravating factor. We held, in relevant part:

> We recognize that the same circumstances may often form the basis for two or more aggravating or mitigating factors. In such cases, sentencing courts should make specific findings as to all aggravating or mitigating factors established by the evidence. However, when several aggravating or mitigating factors are based on precisely the same conduct and intent, they should be treated by the court as merging, and the least significant factors should be deemed included in the most significant. The presumptive sentence can then be adjusted based upon consideration of the most significant factor.

641 P.2d at 843 n. 33.

In retrospect, we think our original holding on this issue is problematical. The state correctly points out that requiring "merger" of all aggravating or mitigating factors based on the same conduct and intent of the defendant will lead to undesirable consequences. If, for example, a defendant inflicts injuries on his victim by using a dangerous instrument in a manner that manifests deliberate cruelty, the same conduct and intent would result in the existence of three separate aggravating factors. *See* AS 12.55.155(c)(1), (2), and (4). Yet our original holding would preclude separate consideration of these three factors, even though each is independent of the other.

Moreover, although the merger rule stated in our original decision would permit consideration of all three factors insofar as the two less significant factors were deemed to be merged into the single most significant factor, such an analysis would inevitably be artificial. Because the three aggravating factors are independent, there is simply no realistic means to determine which of the factors should be deemed most important or which factors should be deemed of lesser importance.

Accordingly, we think it appropriate to modify the portion of our *Juneby* opinion indicating that a separate consideration of aggravating or mitigating factors is inappropriate in all cases where two or more factors are based on the same conduct and intent of the accused. We believe that our holding must be tailored more narrowly to the specific circumstances presented by Juneby's case. The sentencing judge in Juneby's case found that Juneby caused physical injury to V.W., his victim, and that he had acted with deliberate cruelty. Two aggravating factors were thus established. *See* AS 12.55.155(c)(1) and (2). The judge further found Juneby's crime to be aggravated in that it was among the most serious conduct included in the definition of first-degree sexual assault. AS 12.55.155(c)(10). In making this finding, however, the judge expressly relied, in part, on the fact that Juneby had inflicted physical injury and on the fact that he had acted with deliberate cruelty. It is in this narrow context that our decision indicated that it was inappropriate to give separate consideration to aggravating factors involving the same conduct. Under these particular circumstances, we continue to believe that the sentencing court's dual use of aggravating factors must be deemed improper.

Although we have disavowed the broad language of our original opinion requiring merged treatment of all independent aggravating and mitigating factors which are based on the same intent and conduct of the accused, where, as in this case, certain conduct of the defendant establishes specific aggravating factors and is also relied upon

in determining that the defendant's conduct was among the most serious within the definition of the offense under AS 12.55.-155(c)(10), the potential for abuse continues to exist. To the extent that AS 12.55.-155(c)(10) serves as a catchall within which a number of more specific aggravating factors are simply accumulated, it is not truly separate from and independent of its component parts. Thus, in order to assure that the same factors are not relied upon twice to increase a presumptive term, in such instances the sentencing court should assess the significance of the specific aggravating factors by treating them as components of the more general finding that the defendant's conduct was among the most serious within the definition of the offense.[1]

### III.  OTHER ARGUMENTS

In its brief on rehearing, the state has requested us to revise the original opinion in *Juneby* in a number of other respects. Although we decline to do so, we believe that the arguments made by the state deserve brief discussion.

A.  *Treatment of physical injury as an aggravating factor.*

■ On rehearing, the state takes issue with the treatment given in our original opinion to the aggravating factor of physical injury to others, AS 12.55.155(c)(1). In *Juneby,* we initially observed that the presumptive terms specified in AS 12.55.125 were meant to reflect appropriate sentences for typical offenses in a particular class. Thus, we stated:

> Under the view espoused by the legislature, a presumptive term represents the appropriate sentence for cases that fall within the middle-ground between the opposing extremes of the most and least serious conduct for a given crime. It is to be expected, then, that sentences equalling or varying only slightly from the presumptive terms will generally be suitable when presumptive sentencing applies. Minor adjustments for aggravating or mitigating circumstances might be appropriate in a significant number of cases; only in unusual cases, however, can it be anticipated that substantial deviation from the presumptive term will be called for.

641 P.2d at 833. We then proceeded to a more specific consideration of the aggravating factor of physical injury to others as set out in AS 12.55.155(c)(1). We held, in relevant part:

> With specific reference to the aggravating factor of injury to others, where the crime charged is one that does not ordinarily involve the use of force or violence in its perpetration, the fact that a person sustains injury—even if the injury is relatively slight—assumes considerable importance as an aggravating factor. This is so because cases falling within the middle-range of seriousness for such offenses would involve no violence or injury. Hence, any actual injury would constitute a significant deviation from the norm for the offense; cases involving actual injury would fall significantly nearer to that end of the spectrum that includes the most aggravated conduct for the offense.
>
> By contrast, where the existence of injury is a common element of the crime charged, or where the crime is one typically committed by violent means, the same analysis requires far less weight to be given to relatively minor injuries. It would be appropriate to place significant weight on the aggravating factor of physical injury in such cases only when the injury is so severe that it can realistically be said to deviate significantly from the types of injury characteristic of the offense.

641 P.2d at 838. Finally, we turned to the particular circumstances involved in the case before us, holding:

---

1. The same approach should be taken, of course, in cases where one or more specific mitigating factors are relied upon by the sentencing court to conclude that the defendant's conduct was mitigated because it was among the least serious within the definition of the offense.  AS 12.55.155(d)(9).

In Juneby's case, the crime charged was sexual assault in the first degree, as defined in AS 11.41.410(a)(1), which states:

(a) A person commits the crime of sexual assault in the first degree if,

(1) being any age, he engages in sexual penetration with another person without consent of that person . . . .

This particular offense is essentially the equivalent of the crime of rape under prior law. We would be blinding ourselves to reality if we did not recognize that, in most cases involving rape, or sexual assault in the first degree under AS 11.41.410(a)(1), actual or threatened violence will be involved, and the victim will suffer at least some level of physical injury or discomfort. The use of force and the infliction of at least some physical injury to the victim are, realistically, characteristic of the crime of rape. . . . As with all other presumptive sentences, the ten-year presumptive term for first degree sexual assault [applicable in Juneby's case] was meant by the legislature to be appropriate in the majority of cases— those cases involving conduct that is characteristic of the offense of rape and that falls into the middle-ground between the most serious and least serious extremes for the offense. It must therefore be recognized that this presumptive term takes into account the high potential for use of violence and the likelihood of some physical injury in first degree sexual assaults falling within the definition of AS 11.41.410(a)(1).

Where, as here, violence and injury are characteristic of an offense defined by statute, the mere fact of some physical injury to the victim as a result of the defendant's conduct, though technically an aggravating factor under AS 12.55.-155(c)(1), will not justify a significant increase in the presumptive term.

641 P.2d at 838–39.

The state has challenged this holding on a number of grounds. In its brief on rehearing the state has gone to considerable lengths to argue that the provisions of AS 11.41.410(a)(1) are not restricted to incidents involving forcible conduct, as under prior law, but encompass all cases of nonconsensual sexual penetration, whether violent or nonviolent. The state maintains that our treatment of injury to others as an aggravating factor in cases of first-degree sexual assault disregarded this distinction and minimized the significance of violence in cases involving sexual assault. We cannot agree.

There is no doubt that the state is correct in observing that AS 11.41.410(a)(1) was deliberately written to include all cases of nonconsensual sexual penetration within the definition of first-degree sexual assault, thereby specifically abandoning the traditional requirement of active physical resistance by the victim as an element of the offense. This change is both laudable and significant; however, it does not at all affect the accuracy of the conclusions reached in our original opinion.

In pressing the argument that the current definition of first degree sexual assault dispenses with the requirement of force, the state misses the point of our initial holding.[2]

---

**2.** In advancing this argument, the state also loses sight of the specific definitions set forth in the revised code for the terms "without consent" and "force." A close reading of these definitions leaves room for doubt as to the accuracy of the state's assertion that the offense of first-degree sexual assault, as presently defined, entirely dispenses with the requirement of force. The code's definition of "force" is expansive. AS 11.81.900(b)(22) states that " 'force' means any bodily impact, restraint, or confinement *or the threat of imminent bodily impact, restraint or confinement . . . .*" (emphasis added). The term "without consent," on the other hand, is closely linked to the concept of force. AS 11.41.470(3) provides:

(3) "without consent" means that a person

(A) with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone; or

(B) is incapacitated as a result of an act of the defendant.

Given these definitions, it is questionable whether any significant number of cases will arise in which no showing of "force" is included as part of the state's proof that an assault was committed "without consent" of the vic-

While the boundaries of conduct encompassed within the definition of first degree sexual assault have been expanded to include instances of sexual penetration in which no resistance or struggle is involved, the fact remains that the *typical* case of first-degree sexual assault based on the theory of non-consensual sexual penetration will involve some violence and will be likely to result in at least some injury. The legislature's decision to include first-degree sexual assault within the category of class A felonies is itself an indication of the fact that the offense was deemed to constitute a violent crime. This is demonstrated by AS 11.81.250 which provides, in relevant part:

(a) For purposes of sentencing under AS 12.55, all offenses defined in this title, except murder in the first and second degree and kidnapping, are classified on the basis of their seriousness, according to the type of injury characteristically caused or risked by commission of the offense and the culpability of the offender. Except for murder in the first and second degree and kidnapping, the offenses in this title are classified into the following categories:

(1) class A felonies, *which characteristically involve conduct resulting in serious physical injury or a substantial risk of serious physical injury to a person; . . .* [emphasis added].[3]

Thus, the fact cannot be ignored that, even though significant violence is not a necessary component of first-degree sexual assault, it is a component that is typically associated with the offense. Since presumptive terms are intended to be applicable in typical cases, and not in aggravated or mitigated cases, the presumptive ten-year term applicable to Juneby must be

tim. This examination of the statutory definitions of "force" and "without consent" emphasizes the point that, in adopting the current first-degree sexual assault provision, the legislature was primarily concerned with eliminating the outdated common law requirement of "resistence to the utmost" by the victim. There is little to indicate that the legislature shifted away from the fundamental view that first-degree sexual assault is primarily a crime of violence.

deemed to take into account the potential for violence and the likelihood of some degree of physical injury which is typical of the offense for which he was convicted.

The state's insistence that a sentencing judge should not be foreclosed from making significant increases in presumptive terms in light of relatively minor injuries is also unrealistic in that it ignores the applicable statutory definition of "physical injury." According to the definition provided in AS 11.81.900(b)(40), " 'physical injury' means a physical pain or an impairment of physical condition." As can readily be seen, this definition of "physical injury" is a minimal one; in virtually all cases of nonconsensual sexual penetration, even when no significant force is involved, some physical pain will be inflicted on the victim. Thus, the aggravating factor of physical injury to others, as provided for in AS 12.55.155(c)(1), could almost by definition be established in almost any first-degree sexual assault case involving nonconsensual sexual penetration. Hence, reliance on the aggravating factor of injury to others, unless tempered by an approach in which that factor is viewed realistically—in light of the nature of the offense charged and the seriousness of the injury in the particular case—might well lead sentencing judges to order, almost automatically, that significant increases of presumptive terms be given in such cases.

The state also protests that our treatment of the aggravating factor of physical injury is inconsistent with the basic holding of the *Juneby* opinion that the amount by which presumptive sentences should be increased or decreased in light of aggravating or mitigating factors must be determined by applying the *Chaney* criteria, as stated in AS 12.55.005, to the specific factors es-

**3.** Since publication of our original opinion in *Juneby,* the legislature has amended the criminal code, making first-degree sexual assault an unclassified felony, punishable by imprisonment for a term of not more than thirty years. The presumptive sentence for a second felony conviction of first-degree sexual assault has now been increased to a term of fifteen years' imprisonment. *See* AS 11.41.410(b); AS 12.-55.125(i)(3).

tablished in each case. We think the state has misperceived the nature of our ruling. The essence of our original decision on this issue was that, in cases involving violent crimes that typically result in some physical injury, the most significant increases to a presumptive term in light of the aggravating factor of injury to others under AS 12.55.155(c)(1) should be reserved for situations involving serious physical injury. This holding does not, as the state argues, establish a more stringent rule, which operates independently of the basic requirement that adjustment of presumptive sentences must be governed by the *Chaney* criteria. Rather, our observations concerning the aggravating factor of physical injury to others merely spell out the appropriate context within which the *Chaney* criteria must be applied.

A relevant consideration in all presumptive sentencing cases is that the existence of aggravating or mitigating factors requires adjustment of the presumptive term in light of the specific factors proved. Proof of an aggravating or mitigating factor does not, however, warrant wholesale abandonment of the presumptive sentencing structure and application of the *Chaney* criteria to the totality of the circumstances of the case as if a presumptive sentence had never applied. As we said in the original *Juneby* opinion:

> When applied to the adjustment of a presumptive sentence, ... the *Chaney* analysis should not be broadened into a consideration of all circumstances of the offense, as if the sentence were being imposed anew, without regard for the presumptive term. Instead, consideration of the *Chaney* criteria should focus specifically on the aggravating and mitigating conduct in the particular case. The presumptive term should remain as the starting point of the analysis, and the

*Chaney* criteria should be employed for the limited purpose of determining the extent to which the totality of the aggravating and mitigating factors will justify deviation from the presumptive term. 641 P.2d at 835 n. 21.

Thus, our discussion in the original *Juneby* opinion of the aggravating factor of physical injury to others was not intended to establish a new rule for adjustment of presumptive terms, superseding the *Chaney* analysis. The discussion was, instead, aimed at clarifying the starting point for the *Chaney* analysis where the court must determine the amount by which a presumptive term should be increased in light of the aggravating factor of injury to others. In applying the *Chaney* criteria, for purposes of adjusting a presumptive term, the sentencing court is obligated to consider "the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order." AS 12.55.005(4). Essential to an accurate application of this consideration is recognition of the fact that presumptive sentences were not conceived of as being appropriate for either the most mitigated or the most aggravated offenses within a given class. Thus, in dealing with adjustment of a presumptive sentence, when a sentencing court considers the aggravating factor of physical injury to others in the case of an offense which typically involves infliction of injury, there will be little justification under AS 12.55.005(4) for attaching great significance to the existence of injuries that are characteristic of the particular offense. In such a case, significant increase in a presumptive term based solely on a showing of minor injuries will be clearly mistaken.[4]

We therefore find no merit in the state's request that we modify the portion of our original opinion in which the aggravating factor of injury to others is discussed.

---

4. In our original decision, we did not conclude that the sentencing court was clearly mistaken in placing excessive weight on the aggravating factor of physical injury to others. There were two reasons why such a finding was not appropriate. First, the sentencing court's remarks did not make clear the extent of the physical injuries that the court found to have been established. Second, and more significantly, the sentencing court's remarks did not specify the extent to which V.W.'s injuries contributed to the decision to impose a ten-year increase in Juneby's presumptive term.

### B. Use of conduct for which a separate conviction has been entered.

■ The state has separately suggested that our original decision should be altered insofar as it prohibits consideration as an aggravating factor of conduct by the defendant for which a separate conviction has been entered and a separate sentence imposed. In reaching our decision, we applied by analogy the policy underlying AS 12.55.-155(e), which prohibits consideration of conduct as an aggravating factor if the conduct is an essential element of the offense for which the accused was convicted. The state argues on rehearing that the policy underlying AS 12.55.155(e) is inapplicable as to elements of another offense for which a conviction has separately been entered. However, the state's argument is based almost entirely on the fact that Juneby's sentence for burglary and his sentence for sexual assault were imposed concurrently. In our view, this argument simply disregards the fact that, even though it was concurrent, Juneby's sentence for burglary constituted a separate and distinct punishment from his sentence for sexual assault. Moreover, the state's argument on rehearing presupposes that, in cases involving multiple offenses, concurrent sentencing will be the rule; this assumption is factually unsupported, especially in light of recent legislative amendments. *See* AS 12.55.-025(e) and (g).

Furthermore, the position advocated by the state would apparently allow consideration of an aggravating factor involving conduct upon which a separate conviction was based even when the separate conviction resulted in a consecutive sentence. Under such circumstances, the results would be anomalous. In a case where double jeopardy did not prohibit separate convictions and sentences for multiple offenses, each of two convictions entered against the defendant could be deemed aggravated in light of the other conviction, and, in addition, the two sentences could be consecutively imposed. We think a rule permitting such a result would be intolerable, especially in light of the legislature's goal, in adopting presumptive sentencing, of achieving uniformity and eliminating unjustified disparity in sentencing.[5]

## IV. CONCLUSION

In enacting Alaska's presumptive sentencing statutes, the legislature created an elaborate system of criminal sentencing. Because of the procedural complexity of the presumptive sentencing scheme that has been devised by our legislature, and because of that system's undeniable tendency to restrict the sentencing discretion of individual judges, it is inevitable that many members of the judiciary will view presumptive sentencing with a measure of perplexity and a good deal of disfavor. Nevertheless, we emphasize that the presumptive sentencing system is a statutory one, which is binding on sentencing courts and this court alike. In order to assure that our legislature's goals of achieving uniformity and eliminat-

---

5. As an additional issue on rehearing, the state argues that, we should apply a substantial evidence test rather than the "clearly erroneous" standard to review factual findings made by a sentencing court in adjusting a presumptive sentence. Cases cited by the state in support of its argument are inapposite. In *McKinney v. State*, 566 P.2d 653, 662 (Alaska 1977), the supreme court approved use of the substantial evidence test where no factual findings had been made by the trial court and where none were required. In such cases, the evidence is construed in the light most favorable to upholding the ruling of the lower court, and it is clear that the substantial evidence test serves as a procedural device to facilitate appellate review in the absence of findings of fact. By contrast, under the sentencing provisions of AS 12.55.- 155(f), "[a]ll findings must be set forth with specificity." In *Helmer v. State*, 608 P.2d 38, 39 (Alaska 1980), also relied on by the state, the substantial evidence test was deemed appropriate in reviewing the sufficiency of evidence to support the trial judge's conclusion on the ultimate factual question of the defendant's guilt. In the context of appellate review of factual determinations made in a presumptive sentencing proceeding, we think that adopting the "substantial evidence" test is particularly inappropriate in light of the fact that, ultimately, appellate review of the sentence itself must be based on the "clearly mistaken" standard, which calls for an independent evaluation of the record by the appellate court. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

ing unjustified disparity are carried out, it will be essential for all courts to adhere to the letter and spirit of the presumptive sentencing statutes.

Not surprisingly, these statutes give rise to many difficult questions of interpretation. In our original *Juneby* opinion, we attempted to resolve a number of those questions; on rehearing it has become apparent that some of our original answers required clarification. We think it is important, however, to indicate that the basic points we made in our original holding remain intact. These points are neither difficult to understand nor burdensome to apply.

The system of presumptive sentencing was enacted as a means of assuring uniformity and eliminating unjustified disparity in criminal sentencing. The presumptive terms specified by the legislature are intended to indicate the appropriate sentence for typical, or "average," cases within each category of offense. It can thus be expected that, in the great majority of cases, the appropriate sentence will be one that does not depart significantly from the specified presumptive term. The process of adjusting presumptive sentences for aggravating or mitigating factors is one that, while pro-

cedurally complex, must not be applied inflexibly or mechanistically. In each case, a realistic assessment of the totality of the evidence relating to aggravating and mitigating factors must be made in order to determine the extent to which the case may fairly be said to be more aggravated or more mitigated than the average for the particular offense. Increasingly larger adjustments to presumptive terms will be justified as cases deviate farther from the norm for a given offense. The most significant upward or downward adjustments must be reserved for those cases that are truly atypical or unusual in severity or lack of severity.

To the extent that the original opinion deciding this case is inconsistent with our opinion on rehearing, the original opinion is MODIFIED. In all other respects, the original opinion is AFFIRMED.

COATS, J., not participating.