STATE of Alaska, Appellant,

v.

Dennis M. RICHARDS, Appellee.

No. A–1325.

Court of Appeals of Alaska.

May 30, 1986.

Cynthia Ducey, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellant.

Laurel J. Peterson, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge:

Dennis Richards was convicted, following a jury trial, of robbery in the first degree, AS 11.41.500(a)(1). Richards was subject to a presumptive sentence of seven years. *See* AS 12.55.125(c)(2). Judge Rene Gonzalez found one aggravating factor and one mitigating factor applied to the sentencing. He found that "the defendant knew the offense involved more than one victim," AS 12.55.155(c)(9), but that the "conduct constituting the offense was among the least serious conduct included in the definition of the offense," AS 12.55.155(d)(9). Judge Gonzalez sentenced Richards to seven years with thirty months suspended and placed Richards on probation for five years following his release from confinement. The state appeals, arguing that Judge Gonzalez erred in finding the "least serious" mitigating factor and arguing that the sentence imposed was clearly mistaken. We affirm.

At the time of the offense Richards had just turned twenty years old. His only prior offenses consist of several traffic offenses and a misdemeanor offense for eluding a police officer in 1980. This conviction was set aside after Richards completed a suspended imposition of sentence.

The current offense involved the armed robbery of a McDonald's restaurant. The weapon that Richards used in committing the robbery was unloaded and inoperable.

Factors in mitigation and factors in aggravation must be established by clear and convincing evidence. AS 12.55.155(f). A finding by the trial court that an aggravating or mitigating factor exists is entitled to deference, and we are to reverse the trial court's decision only if we find the decision is clearly erroneous. *Juneby v. State*, 641 P.2d 823, 834 (Alaska App.1982),

*modified on other grounds,* 665 P.2d 30 (Alaska App.1983). Judge Gonzalez, in finding the mitigating factor, acknowledged that this was a close case. We conclude that the fact that the weapon that was used was inoperable, and the apparent lack of planning of the robbery on Richards' part, support Judge Gonzalez' decision to find the mitigating factor. We also conclude that the facts of the robbery, the age of the defendant, and his lack of a prior record support the sentence which Judge Gonzalez imposed. We do not find that the sentence was clearly mistaken.

AFFIRMED.

SINGLETON, Judge, concurring.

I join in Judge Coats' decision to affirm Judge Gonzalez' ruling that a robbery committed with an unloaded and inoperable handgun may be found to be among the least serious conduct included within the definition of robbery in the first degree. AS 12.55.155(d)(9).

I write separately to make two points. First, to show that our decision today is not in conflict with earlier cases interpreting this mitigating factor and its corollary, AS 12.55.155(c)(10) (most serious conduct), such as *Walsh v. State,* 677 P.2d 912, 916–18 (Alaska App.1984) (reckless manslaughter not necessarily less serious than intentional manslaughter mitigated by extreme provocation), and *Juneby v. State,* 641 P.2d 823, 841 (Alaska App.1982), *modified on rehearing,* 665 P.2d 30 (Alaska App.1983) (sexual assault in the first degree could be committed in one of four alternate ways; each was of equal dignity, and the trial court erred in determining that "forcible rape" was always more serious conduct than "statutory rape"). Second, I wish to emphasize a distinction, obscured by the dissent, between (1) finding a mitigating factor by clear and convincing evidence, and (2) reducing a presumptive sentence in reliance on that factor. *See Linn v. State,* 658 P.2d 150 (Alaska App.1983) (establishment of aggravating or mitigating factor by clear and convincing evidence does not,

standing alone, warrant adjustment of a presumptive term).

The result we reach in the instant case is in line with earlier cases in which we have interpreted the most serious offense aggravator and the least serious offense mitigator. Under former law, various forms of sexual exploitation of an extreme nature were labeled first-degree sexual assault. Beyond a common nexus in extreme sexual exploitation, however, former AS 11.41.-410(a) described four somewhat distinct offenses ranging from forcible rape and attempted forcible rape causing serious physical injury to statutory rape and incest. The first two alternatives are crimes of violence, which invade an adult victim's freedom of choice, while the latter two alternatives are crimes of imposition, exploiting a child's youth and vulnerability. Since these crimes protect different interests, we concluded that the legislature saw forcible rape and statutory rape as different crimes of equal seriousness and intended that neither was more aggravated or mitigated than the other. *Juneby v. State,* 641 P.2d at 841.

We had occasion to consider a similar issue in *Walsh v. State,* 677 P.2d 912 (Alaska App.1984). There, the offense was manslaughter. AS 11.41.120(a)(1) (intentionally, knowingly or recklessly causing the death of another). Walsh argued that his conduct in recklessly driving a motor vehicle, while he was intoxicated, so that it collided head-on with another vehicle driving in its proper lane of traffic, was necessarily less serious than intentionally or knowingly killing someone. We rejected Walsh's argument for two reasons. First, we noted that intentional or knowing homicide is murder, unless reduced to manslaughter by extreme provocation. We reasoned that a trial court might reasonably find that an intentional killing that was substantially provoked might be less serious than a reckless homicide not otherwise mitigated. Secondly, we noted that extreme recklessness resulting in the death of another might constitute second-degree murder. In *Pears v. State,* 672 P.2d 903

(Alaska App.1983),[1] we decided that the same factors a jury should consider in determining whether reckless homicide is murder or manslaughter, should also be considered by the trial court in deciding whether a given reckless manslaughter is typical, least serious, or most serious. In Walsh's case, we concluded that the trial court did not err in declining to find his conduct the least serious within the definition of manslaughter. 677 P.2d at 918. *Walsh* establishes that a trial court may not decide the question of least serious conduct in a vacuum but must consider the totality of the circumstances in deciding whether the defendant's conduct is typical for the offense or whether it verges on a greater or lesser offense. *Accord Davis v. State,* 706 P.2d 1198, 1201 (Alaska App. 1985) (upholding rejection of mitigating factor in robbery prosecution under the totality of the circumstances).

In contrast, while separated into degrees, there is but one crime of robbery. The interest protected by sanctioning robbery in the first and second degrees, however performed, is freedom from physical injury. The dissent, of course, is correct: that the legislature wished to prevent the creation of a risk of physical injury, as well as the infliction of such injury. The distinction between robbery in the first and second degrees is the possession or use of a dangerous instrument. *Compare* AS 11.41.-500 (robbery in the first degree) *with* AS 11.41.510 (robbery in the second degree). Firearms and knives—deadly weapons— are in a subclass of dangerous instruments. *See* AS 11.81.900(b)(11) & (13). Apparently, the legislature distinguished between the two offenses, because it believed that possession of a dangerous instrument enhanced the risk of serious physical injury. This conclusion is reinforced by the reasoning behind the legislature's clarification of felonies. AS 11.81.250(a)(1)(class A felonies characteristically involve conduct resulting in serious physical injury or a substantial risk of serious physical injury to a person), which should be compared with AS 11.81.250(a)(2)(class B felonies characteristically involve conduct resulting in less severe violence against a person).

Robbery in the first degree is a class A felony; robbery in the second degree is a class B felony. With these distinctions in mind, it is reasonable to divide class A felonies into least serious, typical, and most serious felonies based on the magnitude of the risk of serious physical injury presented by a specific defendant's conduct at the time and place in question. Where conduct actually causes serious physical injury, the defendant's conduct would be among the most serious. AS 12.55.155(c)(10). Where the defendant's conduct presents a substantial risk of serious physical injury, but no injury in fact is suffered, the case would be typical, and the presumptive sentences in AS 12.55.125(c) would appear appropriate. If there was sufficient risk of physical injury, because of the use of a dangerous instrument, to warrant characterization as a class A felony, but the magnitude of the risk under all the circumstances was low, then a mitigated case could be found. AS 12.55.155(d)(9). This analysis is also consistent with the legislature's apparent intent in establishing aggravating and mitigating factors for most serious and least serious conduct. As the conduct approaches a greater offense, it is most serious and, conversely, as it approaches a lesser offense, it is least serious. *See Braaten v. State,* 705 P.2d 1311, 1325 (Alaska App.1985) (Singleton, J., concurring).

The distinction between robbery in the first and second degree is the presence of a dangerous instrument defined as anything which, under the circumstances in which it is used, is capable of causing death or serious physical injury. AS 11.81.-900(b)(11). Deadly weapons, including knives and firearms, are a subclass of dangerous instruments. *See* AS 11.81.-900(b)(13). The reason for this distinction is a legislative recognition of the increased

---

**1.** This aspect of our reasoning in *Pears* was not disapproved when the supreme court remanded this case for resentencing. 698 P.2d 1189 (Alaska 1985).

risk of death or serious physical injury where a dangerous instrument is used. Thus, it is reasonable for a trial court to find that robbery in the first degree approaches a robbery in the second degree (*i.e.*, the least serious robbery in the first degree) as the risk of serious physical injury diminshes and to further find that the risk of injury from a firearm diminishes where that firearm is unloaded and, in fact, inoperable. *See Nell v. State*, 642 P.2d 1361, 1371 (Alaska App.1982) (recognizing a robbery with an unloaded firearm as among the least serious within the category of the aggravated robbery offense). *Cf. Hobbs v. State*, 363 P.2d 357, 358–59 & n. 3 (Alaska 1961) (under former law, threat with an unloaded pistol could not support conviction for assault with a dangerous weapon unless it was used as a club). *Accord Else v. State*, 555 P.2d 1210, 1212–13 (Alaska 1976).[2]

The second issue I wish to address, the effect the mitigator should have had on the sentence, is more problematical. As we found in *Linn*, the establishment of an aggravating factor, and by reasonable extension, a mitigating factor, does not automatically justify increasing or decreasing a presumptive sentence. 658 P.2d at 153. No matter how many aggravating or mitigating factors are properly found, a trial court need not adjust a presumptive sentence if adjustment is not warranted by the facts of the case. The legislature pre-scribes a five-year presumptive sentence for a first offender convicted of a class A felony and a seven-year presumptive term for such a person if he or she possessed a firearm or used a dangerous weapon or caused serious physical injury. AS 12.55.-125(c)(1) & (2).[3]

Richards possessed an inoperable firearm. In addition, the trial court found as an aggravating factor that Richards' offense involved more than one victim. AS 12.55.155(c)(9). Nevertheless, the trial court mitigated the sentence by suspending thirty months (two and one-half years). Richards, therefore, has a presumptive sentence of seven years, with four and one-half years to serve. Under *Linn*, the trial court, having found aggravating and mitigating factors, must evaluate a proper sentence under the *Chaney* criteria. *See State v. Chaney*, 477 P.2d 441 (Alaska 1970). I would not find a sentence of six years to serve in Richards' case too severe. *See Nell v. State*, 642 P.2d at 1371 (six-year presumptive sentence for robber using unloaded firearm reduced by one year to a five-year presumptive term). The trial court could have given more weight to the number of victims the possible psychological injury to those victims and the very real risk of victim retaliation than was, in fact, given. On the other hand, having found a mitigating factor, the court could have reduced the presumptive term to three and one-half years. AS 12.55.155(a)(2). Judge

---

**2.** I recognize that the revised code changes the result specified in *Hobbs* and *Else*, at least as far as robbery is concerned. The legislature apparently included feigned use of a weapon in a robbery, or a robbery with an unloaded firearm in the category of class A felonies for two reasons: (1) the additional terror instilled in the victim by the threat inherent in the apparent presence of a weapon, and (2) the fact that the additional terror might lead to a more violent response by the victim or another (*e.g.*, a police officer), thereby endangering everyone in the vicinity. Alaska Criminal Code Revision Part II, at 83 (Tent.Draft 1977). These are certainly factors which the trial court may consider in determining whether to adjust a sentence under *Linn*, 658 P.2d at 153. *See Oakley v. State*, 715 P.2d 1374, 1377–78 (Wyo.1986). They do not, in my view, preclude a finding that an unloaded, inoperable gun creates a substantially reduced risk compared to the use of a loaded gun. This

seems to be the reasoning underlying *Hobbs* and the cases upon which it relies. 363 P.2d at 358–59 & n. 3. *See also Else*, 555 P.2d at 1212–13 & n. 4. The victim's fear and his or her response would likely be the same whether or not the perpetrator's weapon is loaded, but the actual risk from a loaded weapon would be appreciably greater than the actual risk from an unloaded weapon.

**3.** The state has not argued that the five-year presumptive term specified in AS 12.55.-125(c)(1) operates as a floor beneath which the seven-year term specified in AS 12.55.125(c)(2) may not be reduced. It is difficult to imagine a robbery in the first degree which would not qualify for the presumptive term in (c)(2). *Cf. Burks v. State*, 706 P.2d 1190, 1192–93 (Alaska App.1985).

Gonzalez balanced the aggravating and mitigating factors and imposed a sentence of four and one-half years. A reasonable judge could have struck the balance to require a longer sentence without being clearly mistaken. I am not prepared to say that Richards' sentence of seven years with two and one-half years suspended is clearly mistaken when all relevant factors are considered. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

BRYNER, Chief Judge, dissenting.

I believe Judge Gonzalez was clearly erroneous in finding Richards' conduct to be among the least serious within the definition of first-degree robbery. On April 2, 1985, Richards entered a McDonald's restaurant and robbed it, holding four employees at gunpoint and taking more than $400. The presentence report describes the robbery as follows:

> [Witness C.A.] saw the defendant enter the west door of the restaurant, pulling a ski mask over his head as he walked. [C.A.] saw him jump over the counter and grab one of the employees. [C.A.] realized that a robbery was in progress, fled the store and ran to the Texaco station to call the police.
>
> Employee T.K. was working the cash register window when the defendant grabbed her arm, put a silver gun to her ribs and told her he wanted all the money from the cash registers. T.K. and the defendant walked over to the day manager, A.B. The defendant ordered A.B. to open the drive-through window drawer. She opened it and gave him the money. He wanted to know if there were any large bills under the drawer. She pulled it out to show him there were none, and put the drawer back. She asked him if he wanted coins, and he shook his head, no. The defendant then grabbed another employee, S.H., who was standing behind the stove. He forced her at gun point to the walk through window area and made her sit on the floor with fellow employees, T.K. and V.I. They were all crying as the defendant and A.B. walked to other cash registers where A.B. was forced to open them and give him the money. The defendant repeatedly checked on the seated employees to tell them that they would be all right and for them not to move. He then asked A.B. where the safe was located. She told him that it was located in the back of the restaurant. He took her at gun point to it. She told him that it was difficult to open and might take a couple of efforts. After she failed on the second attempt, he said, "don't be fucking with me," and she told him she was not. She told him that she was a little nervous and could not get it open. He then "smacked" her with his left hand on the right side of her head but did not hurt her. This made her more nervous but she finally opened the safe. The defendant told her he had a friend waiting for him and walked out the front door. She did not close the safe because she feared she could not open it again. She walked out of the office to see if she could find him. The other employees told her that he jumped over the counter and left. She returned to the office to answer the phone and it was a woman from the Anchorage Police Department.

Although Richards objects in general terms to the tenor of language in the presentence report, he specifically disputes its description of the offense in only one particular: he notes that, at the sentencing hearing, A.B. did not testify that Richards "smacked" her but rather stated that "he brushed me up side the side of my head with his hand...."

Alaska Statute 12.55.155(d)(9) allows a mitigating factor to be found when "the conduct constituting the offense was among the least serious conduct included in the definition of the offense...." The plain language of this statutory provision requires the sentencing court, in determining whether the factor has been established, to evaluate the conduct of the accused in light of the statutory definition of the offense for which the accused was convicted.

The only arguable mitigated aspect of Richards' conduct in committing the offense is that his gun was apparently unloaded and inoperable. Under applicable statutory definitions, however, Richards would have been subject to conviction of first-degree robbery and to a presumptive seven-year term if he had not displayed his gun (operable or inoperable), or, for that matter, even if he had been unarmed and only represented by words or conduct that he had a gun. *See* AS 11.41.500, AS 11.41.-510, AS 12.55.125(c)(2).

Given the applicable statutory definitions, it is difficult to understand how Richards' conduct—committing an armed robbery of a commercial establishment by deliberately and openly threatening four separate individuals with what appeared to be an operable hand gun—can realistically be viewed as being among the least serious conduct within the definition of the offense. Richards' conduct did not approximate a lesser offense nor did it qualify only marginally within the definition of first-degree robbery. To the contrary, it must be recalled that robbery is classed as a crime of violence. It is primarily an offense against persons, not property. Thus, based on his conduct, Richards could conceivably have been convicted of four counts of first-degree robbery instead of only one count.

Although the objective level of danger was no doubt somewhat reduced because Richards' gun was inoperable, the emotional trauma and psychological damage occasioned by his conduct was certainly undiminished. To the victims of Richards' crime, it must have been small consolation to learn, days or weeks after the robbery, that the gun Richards held to their ribs had been incapable of firing. Moreover, the fact that the gun was inoperable had no effect whatsoever on the risk that some third party, in response to the open display of the gun, might seek to intervene with a gun of his own, thereby causing further risk to those already threatened.

Even if Richards' crime had involved only one victim, his conduct would fall squarely within the definition of the offense, and the risk resulting from his conduct would be precisely the type of risk against which the statutory provisions seek to protect. Thus, even if there had been only one victim, it seems to me that Richards' conduct, when realistically considered, would fall well within the norm for the offense, despite his use of an inoperable hand gun. Considering, then, the fact that Richards' robbery involved not one, but four separate individuals, it seems wholly inaccurate to characterize his conduct as among the least serious in its class.

If the sentencing court's characterization of Richards' conduct seems difficult to understand, the willingness of the majority of this court to condone that characterization seems utterly mystifying. Assuming the majority's holding is to be taken at face value, any person who, using an unloaded firearm, commits an armed robbery involving four or fewer victims will qualify for mitigated treatment. If, as I suspect will be the case, the majority's decision is not to be taken seriously, then I submit that it ill-serves the cause of justice, for the court will owe all similarly situated defendants a fair explanation of the reasons why they will not be entitled to the mitigation that Richards has received.

Obviously, Richards' youth, his lack of a prior criminal record, the unsophisticated and impulsive manner in which he committed this offense, and his genuine remorse following apprehension are all legitimate concerns for the sentencing court. Yet these circumstances are unrelated to Richards' conduct in committing the offense. They do not justify calling Richards' conduct any less serious than it would be had it been committed by a seasoned professional who planned carefully before the crime. To the extent that Judge Gonzalez felt moved to reduce the presumptive term by virtue of Richards' favorable background and his amenability to rehabilitation, the appropriate course of action would have been referral to the three-judge pan-

**54**

el.[1] Indeed, Richards' counsel appropriately requested such a referral. The presence of these factors did not, however, warrant the strained application of an obviously inapplicable mitigating factor.

1. *See Smith v. State,* 711 P.2d 561 (Alaska App. 1985).