Christopher M. SMITH and Walter King, Appellants,

v.

STATE of Alaska, Appellee.

Nos. A-897/898.

Court of Appeals of Alaska.

Dec. 27, 1985.

Valerie Tehan, Asst. Public Advocate, Sen K. Tan, Asst. Public Defender, and

Dana Fabe, Public Defender, Anchorage, for appellants.

Eugene P. Murphy, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

In this case, we must determine whether manifest injustice resulted from the three-judge sentencing panel's failure to consider, as a mitigating factor in sentencing, favorable information pertaining to the defendants' potential for rehabilitation.

Christopher Smith and Walter King were each charged with two counts of robbery in the first degree, a violation of AS 11.41.-500(a)(1), and were convicted after entering pleas of no contest and guilty. Both men, though first felony offenders, were subject to seven-year presumptive terms of imprisonment. AS 12.55.125(c). At the request of Smith and King, Superior Court Judge J. Justin Ripley referred the case to the three-judge sentencing panel, finding that manifest injustice would result if the presumptive terms were imposed without consideration of the defendants' favorable backgrounds. The panel remanded the case to Judge Ripley, however, concluding that imposition of the presumptive sentence would not amount to a manifest injustice. On remand, at the direction of the panel, Judge Ripley sentenced Smith and King to concurrent seven-year presumptive terms. Smith and King appeal, contending that the three-judge panel erred in failing to find manifest injustice.

We conclude that manifest injustice will result if a sentence is imposed without consideration being given to evidence of Smith's and King's amenability to rehabilitation. Accordingly, we vacate the presumptive sentences and remand to the three-judge sentencing panel for imposition of sentence.

## FACTS

### A. The Offenses.

On the night of December 9, 1983, following a basketball game, Walter King visited his friend Christopher Smith at Smith's home in Anchorage. Smith and King drank about three quarts of malt liquor and smoked some marijuana. Both men were having problems with their girlfriends and felt despondent. They discussed the possibility of returning to their family homes outside Alaska for the Christmas season and eventually decided to commit a robbery to get money for the trip home.

At 1:25 a.m., on December 10, 1983, Smith and King entered a Timesaver convenience store near downtown Anchorage and demanded money from the clerk. Both men were armed with handguns. The clerk handed them about $100 from the cash register. The men departed.

One and one-half hours later, at 3:00 a.m., Smith and King entered a Quik Stop market in Mountain View, again brandishing handguns and demanding money from the clerk. The clerk produced about $100 from the cash register, and the men left the store.

Shortly after the second robbery, Anchorage police officers stopped Smith and King as they attempted to drive away from the vicinity of the Mountain View Quick Stop store. An inspection of the car in which they were driving yielded the stolen currency and the handguns that had been used in the robberies. Smith and King were arrested. They offered no resistance, and, upon arrest, both gave confessions to the police.

### B. The Offenders.

Christopher Smith was twenty years old at the time of the offense. Smith had no prior record of criminal convictions or juvenile adjudications. He has maintained strong ties with his mother and his immediate family in Atlanta, Georgia. Smith came to Alaska with the United States Army. Shortly before committing this offense, he received a general discharge from

the Army under other than honorable conditions. Smith's discharge was apparently related to his use of marijuana, but he was never formally charged with any military violations.

Walter King was also twenty years old at the time of the offense. He also had no prior criminal convictions and no juvenile adjudications. King lived with his family in Olney, Maryland, until 1981. Like Smith, he has maintained strong family ties. King also came to Alaska as a member of the United States Army. He received a general discharge under honorable conditions several weeks before the offense in this case. As with Smith, King was never charged with any military violations, but his discharge was apparently related to the use of marijuana.

As noted in Smith's presentence report, the similarities between Smith and King are remarkable in many respects:

Mr. Smith and his codefendant have a number of similarities in their backgrounds and behavior. They are very close friends; both come from career military families; each lost at least one father to death; each was an outstanding athlete in high school and received public acclaim for his achievements; both served unhappily in the military and received less than honorable discharges. Both Smith and King were raised by loving and devoted parents and [are] respected by those who know them. Both have experienced adversity and pain in their lives as well as love and nurturing. Neither has had previous criminal contact.

After their apprehension both fully accepted responsibility for their acts and gave full disclosure to police. Both seem sincerely sorry for their acts and dread

the prospect of extensive jail time. As with his codefendant Mr. Smith has contributed to society in the past and is capable of continued contribution.[1]

C. The Sentencing Hearings.

Prior to sentencing, neither Smith nor King was able to establish that any specific statutory mitigating factor applied to his case. *See* AS 12.55.155(d). The state did not allege the existence of any aggravating factors. *See* AS 12.55.155(c). Because Smith and King used firearms during the commission of their robberies, they were subject to a presumptive term of seven years' imprisonment for each conviction. AS 12.55.125(c)(2). In the absence of aggravating or mitigating factors, the sentencing court was obligated to impose the presumptive terms unless it concluded that referral of the case to the three-judge sentencing panel, in accordance with AS 12.55.165–12.55.175, was necessary to avoid manifest injustice.

At their sentencing hearing, Smith and King asked Judge Ripley to refer their cases to the three-judge panel for sentencing. Both men argued that manifest injustice would result if their cases were not referred to the three-judge panel, because imposition of the seven-year presumptive term would preclude the court from considering important evidence relating to their good prospects for rehabilitation. In particular, Smith and King maintained that it would be unfair for the court, in imposing sentence, to ignore the good evaluations they received in their presentence reports, their favorable backgrounds and strong family ties, their consistent records of employment and lack of any prior criminal record, their relative youth, and the impul-

---

1. The evaluation in King's presentence report supported the evaluation given in Smith's report, stating:

    From the defendant's vantage point, it is unfortunate the primary goal of his sentence cannot be rehabilitation through supervised release. Mr. King, after his apprehension, fully cooperated with police. He is twenty years old, accepts complete responsibility for his part in the offenses and is genuinely sorry

    for his behavior. The defendant has no prior record, was raised in an atmosphere of love and affection, and seems devoted to his family. Apart from his behavior in the robberies, in many respects he has demonstrated a level of maturity on a par with or beyond his years. Mr. King seems to have been provided all the necessary ingredients in life to become a successful contributing member of society.

sive and unsophisticated manner in which their offenses were committed.

After hearing the argument from all parties, Judge Ripley was persuaded that a referral to the three-judge panel was necessary. Judge Ripley stated, in relevant part:

> I'm not saying that armed robbers by and large shouldn't serve long stretches in jail. But where you have two young fellows that look as different from the normal folks who sit at—or defendants who normally appear at that table, I'm [co]mpelled to say that in order to get any kind of flexibility, there appearing no statutory mitigators or things that realistically approach the statutory mitigator available to me, I believe that given the prior good record and the—all the factors mentioned that we have an obligation to attempt at least to fashion a sentence that is perhaps involving a long term of jail time but at least one that is sufficiently flexible to deal with their problems and not I believe to fall in the seven year range. I believe it would be a manifest injustice to require a flat time sentence. That's my single reason for doing it in both cases. The flat time is seven years. It would take saintly people with an iron will not to give up and not to fall prey to the bad guidance that's available in the penal institutions, particularly the institutions to which they would be sent with a flat time seven year sentence. Taking nothing away from [the prosecutor's] considered argument, nevertheless I direct these files to the three-judge panel.

Upon referral, the three-judge panel conducted *de novo* sentencing proceedings. The panel did not reject any of the factual conclusions reached by Judge Ripley, but it disagreed with his ultimate finding of manifest injustice. Speaking on behalf of the panel, Superior Court Judge S.J. Buckalew stated:

> Counsel, we had an opportunity to carefully consider this issue and all three judges have had an opportunity to read the presentence reports and all the material that's been submitted and we considered the arguments of counsel. I have a few observations to make. First, we all agree that both Mr. Smith and Mr. King have good presentence reports and we've discussed the presumptive sentence and I think I'm safe in saying that but for the presumptive sentence we would probably impose, all three of us would impose a sentence somewhat different than the presumptive term. All three of us agree that some time should be imposed and certainly a lengthy period of probation which would probably more adequately address rehabilitation. And the hard issue is whether or not the imposition of the presumptive term is a manifest injustice. Is the imposition of the presumptive sentence such that it chills the conscience, it's facially unjust and we again looked at the facts and circumstances. We have two young men, both armed with handguns committing two separate armed robberies on the same evening, terrorizing two separate victims and of course it's abundantly clear why the legislature drafted this kind of a statute. Their primary concern of course was discouraging the use of handguns in a robbery. It's a dangerous, terrorizing in most cases it's just a frightening crime which can lead to all kinds of serious injuries including death. We all three agree, in spite of the good presentence report and of the other relevant issues that were raised, that we cannot find the imposition of the presumptive sentence to be a manifest injustice. We'll simply issue an order referring the matter back to Judge Ripley and require him to impose the presumptive term.

On remand from the three-judge panel, Judge Ripley sentenced Smith and King to presumptive terms for their offenses.[2] Smith and King argue on appeal that the

---

2. The state did not request consecutive sentences. The presumptive terms for the two robberies were thus imposed concurrently as to both Smith and King.

three-judge panel erred in declining to find manifest injustice.

## DISCUSSION

Robbery in the first degree is a class A felony. AS 11.41.500(b). A seven-year presumptive term is prescribed by AS 12.55.125(c)(2) for a class A felony committed by a first felony offender who carries or uses a firearm:

(c) A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than twenty years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155–12.55.175:

. . . . .

(2) If the offense is a first felony conviction, other than for manslaughter, and the defendant possessed a firearm, used a dangerous instrument, or caused serious physical injury during the commission of the offense, or knowingly directed the conduct constituted in the offense at a uniformed or otherwise clearly identified peace officer, firefighter, correctional officer, an emergency medical technician, paramedic, ambulance attendant, or other emergency responder who was engaged in the performance of official duties at the time of the offense, seven years....

Alaska Statute 12.55.155(a) permits a sentencing judge discretion to adjust the presumptive term specified in AS 12.55.125(c)(2) when the existence of specific, statutorily designated aggravating or mitigating factors has been established. Twenty-six aggravating factors are set out in AS 12.55.155(c), and fifteen mitigating factors are detailed in AS 12.55.155(d). *See generally Juneby v. State,* 641 P.2d 823 (Alaska App.1982), *modified in part, Juneby v. State,* 665 P.2d 30 (Alaska App.1983). In the absence of aggravating or mitigating factors, an individual sentencing judge has no discretion to deviate from a statutorily specified presumptive term. *State v. La Porte,* 672 P.2d 466 (Alaska App.1983). In such cases, deviation from the presump-

tive term may be accomplished only by referral to the three-judge sentencing panel in accordance with AS 12.55.165–12.55.175. *See generally Lloyd v. State,* 672 P.2d 152 (Alaska App.1983); *Heathcock v. State,* 670 P.2d 1155 (Alaska App.1983).

The circumstances under which an individual sentencing judge may refer a case to the three-judge panel are described in AS 12.55.165:

*Extraordinary circumstances.* If the defendant is subject to ... [a presumptive sentence] under AS 12.55.125(c), (d)(1), (d)(2), (e)(1), (e)(2), or (i) and the court finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors, the court shall enter findings and conclusions and cause a record of the proceedings to be transmitted to a three-judge panel for sentencing under AS 12.55.175.

Alaska Statute 12.55.175 specifies the procedures to be followed by the three-judge sentencing panel upon referral:

(b) Upon receipt of a record of proceedings under AS 12.55.165, the three-judge panel shall consider all pertinent files, records, and transcripts, including the findings and conclusions of the judge who originally heard the matter. The panel may hear oral testimony to supplement the record before it. If the panel finds that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from the imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors, it shall sentence the defendant in accordance with this section. If the panel does not find that manifest injustice would result, it shall remand the case to the sentencing court, with a written statement of its findings and conclusions, for sentencing under AS 12.55.125.

(c) The three-judge panel may in the interest of justice sentence the defendant to any definite term of imprisonment up to the maximum term provided for the offense or to any sentence authorized under AS 12.55.015.

Under both of these statutes, the manifest injustice standard is a crucial one.

In *Lloyd v. State*, 672 P.2d 152 (Alaska App.1983), we had occasion to discuss the manifest injustice standard in connection with sentencing by the three-judge panel. Lloyd was convicted of robbery in the first degree and was subject, under the sentencing provisions then applicable, to a presumptive term of six years. The sentencing judge determined that three statutory mitigating factors applied to Lloyd's case. The mitigating factors gave the court discretion to impose a sentence of as little as three years' imprisonment, or one-half the presumptive term for the offense.[3] Lloyd nevertheless urged the court to refer his case to the three-judge panel, arguing that even a three-year sentence would be manifestly unjust.

Noting that a sentence could be manifestly unjust only if it would "shock the conscience," the sentencing court determined that imposition of a three-year adjusted presumptive sentence would not result in manifest injustice in Lloyd's case. Accordingly, the court declined to refer the case and sentenced Lloyd to the adjusted presumptive three-year term. *Lloyd v. State*, 672 P.2d at 153–54.

Lloyd appealed, contending that the sentencing court erred in concluding that manifest injustice could be found only when a sentence would "shock the conscience." Lloyd urged this court to hold that a sentence results in manifest injustice whenever it is obviously unfair. In affirming the sentencing court's decision, we stated:

We think Lloyd's suggested definition, obvious unfairness, is an accurate and permissible characterization of the manifest injustice standard. However, because this definition, like the manifest injustice standard itself, is highly subjective, it adds little substance to the statutory language. Similarly, we believe that Judge Buckalew's [the sentencing judge's] reference to a sentence that would "shock the conscience" is a subjective description that fairly characterizes the manifest injustice standard. We find it difficult, however, to see any substantial difference between Judge Buckalew's characterization of manifest injustice and the definition proposed by Lloyd. If a judge believed imposition of a presumptive sentence would be obviously unfair, we think it highly likely that he would also find that such a sentence would shock his conscience. Conversely, a judge whose conscience was shocked by the prospect of imposing a presumptive sentence could be expected to find that the sentence would be obviously unfair.

*Lloyd v. State*, 672 P.2d at 154.

In the present case, the parties have focused much of their attention on the concept of manifest injustice and on our discussion in *Lloyd*. Smith and King urge us to define the concept with greater specificity by finding manifest injustice in this case. We believe, however, that the primary issue in this case turns not so much on the definition of manifest injustice as on the manner in which the existence of manifest injustice should properly be determined under AS 12.55.165 and AS 12.55.175.

Under AS 12.55.165, the sentencing court is authorized to refer a presumptive sentencing case to the three-judge panel when it "finds by clear and convincing evidence that manifest injustice would result from

**3.** AS 12.55.155(a) provides, in relevant part:

If a defendant is convicted of an offense and is subject to [presumptive] sentencing under AS 12.55.125(c), (d)(1), (d)(2), (e)(1), (e)(2), or (i) and

. . . . .

(2) the presumptive term of imprisonment is more than four years, the court may decrease the presumptive term by an amount as great as 50 per cent of the presumptive term for factors in mitigation or may increase the presumptive term up to the maximum term of imprisonment for factors in aggravation.

failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors...." Similar language is used in AS 12.55.175 to describe the circumstances under which the three-judge panel may impose a sentence:

> If the panel finds that manifest injustice would result in failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating factors, it shall sentence the defendant in accordance with this section.

The quoted passages make it apparent that these statutes contemplate a finding of manifest injustice in two distinct situations. The first is one in which "manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155...." The second is one in which "manifest injustice would result ... from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors...."

◼ Our decision in *Lloyd v. State* dealt exclusively with the second of these situations: the issue was not whether there were unspecified mitigating factors that deserved the sentencing court's consideration, but rather whether imposition of the adjusted presumptive term would be manifestly unjust. In cases such as *Lloyd,* it is evident that the fairness of the presumptive term itself must be the focal point of the sentencing court's inquiry into manifest injustice, for the court is required to determine whether "manifest injustice would re-sult ... *from imposition of the presumptive term...."* The proper procedure for the sentencing court in such a case is, first, to calculate what the presumptive term would be after adjusting for aggravating or mitigating factors and, second, to determine whether the adjusted term would be manifestly unjust—or plainly unfair—when compared with a sentence the court might deem ideally suitable in the absence of presumptive sentencing.

◼ By contrast, when, as in this case, a request for referral to the three-judge panel involves the first situation contemplated by AS 12.55.165 and AS 12.55.175, that is, when a claim is made that non-statutory aggravating or mitigating factors exist and should be considered by the court in sentencing, then the ultimate fairness of the presumptive term ceases to be central to the issue of manifest injustice: The court must determine if "manifest injustice would result *from failure to consider* [the] relevant [non-statutory] aggravating or mitigating factors...." Thus, where a request for referral to the three-judge panel is based exclusively on an aggravating or mitigating factor not specified under AS 12.55.155, the court must give primary consideration not to the fairness of the presumptive term itself, but rather to the importance of the proposed non-statutory factor and the potential unfairness in disregarding that factor entirely. When this type of a case is presented, the sentencing court must evaluate the importance of the non-statutory factor in light of the traditional sentencing goals: rehabilitation, general and specific deterrence, protection of the public, and community condemnation or reaffirmation of societal norms.[4] Guided

---

4. *See State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). The *Chaney* sentencing criteria have now been codified, in substance, in AS 12.55.005, which provides:

> *Declaration of purpose.* The purpose of this chapter is to provide the means for determining the appropriate sentence to be imposed upon conviction of an offense. The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter. In imposing sentence, the court shall consider
> (1) The seriousness of the defendant's present offense in relation to other offenses;
> (2) The prior criminal history of the defendant and the likelihood of rehabilitation;
> (3) The need to confine the defendant to prevent further harm to the public;
> (4) The circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;

by its evaluation, the court must decide whether imposition of a sentence, without any consideration of or allowance for the non-statutory factor, would be manifestly unjust—that is, plainly unfair.

This is not to say that it is necessarily irrelevant for the court to determine the ultimate effect that a non-statutory aggravating or mitigating factor might have on the adjustment of the presumptive term. There are many cases in which the court might readily find that the ultimate impact of a non-statutory factor on the presumptive term would be negligible. On this basis, the court could reasonably conclude that no manifest injustice would result if the factor were not considered in imposition of a sentence. Yet there will inevitably be many other cases in which a non-statutory factor is so integrally related to the basic goals of sentencing that it would be plainly unfair to disregard it entirely for sentencing purposes, even when its actual impact on the presumptive sentence would be relatively modest.[5]

We believe the facts of the present case provide an excellent example of the point we seek to make. Here, Smith and King argued that the sentencing record contained unusually strong evidence of their favorable potential for rehabilitation. This evidence consisted of a lack of any prior record of criminal convictions or juvenile adjudications, a good history of employment, a favorable background of scholastic and athletic achievement, strong family ties

and continuing family support, and excellent presentence report evaluations. In addition, the evidence showed Smith and King to be youthful offenders who had acted impulsively in the commission of their offenses. Upon apprehension, they were fully cooperative with the authorities and at all times expressed genuine remorse for their conduct. During the sentencing proceedings below, the essence of Smith's and King's arguments was that this evidence amounted to an important mitigating factor, which deserved to be considered in sentencing. In accepting these arguments, Judge Ripley found that manifest injustice would occur if the evidence concerning Smith's and King's potential for rehabilitation were entirely ignored in imposing a sentence.

■■■ The favorable evidence relied upon by Smith and King is integrally related to the *Chaney* sentencing criteria, since it bears directly on the vital sentencing issue of rehabilitation. The significance of the evidence in this respect is made especially clear by Judge Ripley's emphatic finding—one with which the three-judge panel did not disagree—that the seven-year presumptive term would actually damage Smith's and King's chances for rehabilitation. It is also particularly significant that almost all of the statutory mitigating factors set out in AS 12.55.155(d) deal with the accused's conduct during or after the commission of an offense.[6] None of the

---

(5) The effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct; and
(6) The effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms.
See *Nell v. State,* 642 P.2d 1361 (Alaska App. 1982).

**5.** In such cases, manifest injustice would result from failure to consider the non-statutory factor, despite the fact that the presumptive term, when compared with the adjusted term that might ultimately be imposed if the factor were considered, might not in and of itself seem plainly unfair.

**6.** Alaska Statute 12.55.155(d) states:

(d) The following factors shall be considered by the sentencing court and may mitigate the presumptive terms set out in AS 12.55.125:
(1) the offense was principally accomplished by another person, and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim;
(2) the defendant, although an accomplice, played only a minor role in the commission of the offense;
(3) the defendant committed the offense under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected the defendant's conduct;
(4) the conduct of a youthful defendant was substantially influenced by another person more mature than the defendant;

statutory mitigating factors permits consideration of favorable information concerning the accused's background or prospects for rehabilitation. Hence, the presence or absence of statutory mitigating factors sheds little light on the issue of potential for rehabilitation, and, unless evidence of the type relied upon by Smith and King can be considered by the sentencing court, there is a tremendous risk, in cases involving first felony offenders, that a sentence will be imposed without appropriate regard for the goal of rehabilitation.

The primacy of rehabilitation as a sentencing goal has long been recognized in Alaska. Article I, § 12, of the Alaska Constitution provides that "penal administration should be based on the principle of reformation and upon the need for protecting the public." In *Bear v. State*, 439 P.2d

432, 436 (Alaska 1968) (footnote omitted), the Alaska Supreme Court said:

> The determination of the exact period of time that a convicted defendant should serve is basically a sociological problem to be resolved by a careful weighing of the principle of reformation and the need for protecting the public.

In *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), the court described reformation and the need for protecting the public as "the touchstones of penal administration under the Alaska Constitution."

While the legislature has broad discretion to restrict judicial discretion in sentencing, we do not believe that it intended to preclude realistic, individualized consideration of the need and potential for rehabilitation in cases involving first felony offenders.[7] Where, as here, the sentencing

---

(5) the conduct of an aged defendant was substantially a product of physical or mental infirmities resulting from the defendant's age;

(6) in a conviction for assault under AS 11.41.200–11.41.230, the defendant acted with serious provocation from the victim;

(7) except in the case of a crime defined by AS 11.41.410–11.41.470, the victim provoked the crime to a significant degree;

(8) [Repealed, § 42 ch. 143 SLA 1982.]

(9) the conduct constituting the offense was among the least serious conduct included in the definition of the offense;

(10) before the defendant knew that the criminal conduct had been discovered, the defendant fully compensated or made a good faith effort to fully compensate the victim of the defendant's criminal conduct for any damage or injury sustained;

(11) the defendant was motivated to commit the offense solely by an overwhelming compulsion to provide for emergency necessities for the defendant's immediate family;

(12) the defendant assisted authorities to detect or apprehend other persons who committed the offense with the defendant;

(13) the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment;

(14) the defendant is convicted of an offense specified in AS 11.71 and the offense involved small quantities of a controlled substance;

(15) the defendant is convicted of an offense specified in AS 11.71 and the offense

involved the distribution of a controlled substance, other than a schedule IA controlled substance, to a personal acquaintance who is 19 years of age or older for no profit;

(16) the defendant is convicted of an offense specified in AS 11.71 and the offense involved the possession of a small amount of a controlled substance for personal use in the defendant's home.

7. Arguably, different considerations apply to cases involving second and subsequent felony offenders. The existence of a prior conviction or convictions relates directly to potential for rehabilitation and—in conjunction with statutory factors that allow adjustment of a presumptive term based on the nature of a prior conviction (*e.g.*, prior conviction of a more serious class, AS 12.55.155(c)(7); history of repeated assaultive behavior, AS 12.55.155(c)(8); harm caused by past and present offenses consistently minor, AS 12.55.155(d)(13)), and on the proximity of the prior offense to the current offense (*e.g.*, defendant on release for another felony when crime committed, AS 12.55.155(c)(12), defendant on furlough, probation or parole, AS 12.55.155(c)(20))—provides an arguable nexus between the presumptive term adopted by the legislature and the individual offender's prospects for rehabilitation. Where presumptive sentences apply to first felony offenders, it is far more difficult to perceive any nexus between the presumptive term and the goal of rehabilitation; unless the sentencing goal of rehabilitation is to be ignored, there is a far greater need for individualized consideration of evidence relating to a defendant's potential for rehabilitation. As previously indicated, the statutory mitigating factors are primarily oriented toward

record contains unusually strong evidence that a youthful first offender has a particularly favorable potential for rehabilitation, and where the absence of statutory aggravating or mitigating factors would preclude the sentencing court from giving any consideration to that evidence in imposing a sentence,[8] we think referral to the three-judge panel is expressly authorized under AS 12.55.165 and AS 12.55.175.

In the present case, an examination of the three-judge panel's decision indicates that the panel misapplied the manifest injustice standard. Instead of deciding whether failure to consider the favorable evidence relied on by Smith and King would be plainly unfair, the three-judge panel looked only to the issue of whether imposition of the seven-year presumptive sentence would in itself be manifestly unjust. The panel's decision to remand the case to the sentencing court reflected only its determination that the presumptive term was not manifestly unjust *per se.* The panel did not separately examine the fairness of imposing a sentence without any consideration of Smith's and King's prospects for rehabilitation.

We conclude that the panel's focus on the fairness of the presumptive term, rather than on the fairness of imposing a sentence without any consideration of evidence relating to potential for rehabilitation, constituted error. We further conclude that, under the particular circumstances of the present case, the evidence of Smith's and King's potential for rehabilitation was sufficiently significant, as a matter of law, to satisfy the manifest injustice standard and to require that Smith's and King's sentences be imposed by the three-judge sentencing panel.

We must therefore remand this case to the three-judge panel for sentencing. In so doing, we do not purport to dictate the amount of weight to be accorded by the panel to the favorable evidence concerning Smith's and King's prospects for rehabilitation. Primary responsibility for determining the priority and relationship of the various sentencing goals has properly been accorded to the sentencing court. *Nicholas v. State,* 477 P.2d 447, 448–49 (Alaska 1970). We recognize that, in the exercise of this responsibility, the three-judge panel may determine that rehabilitation should not receive the highest priority and that, therefore, the appropriate sentence should not differ markedly from the seven-year presumptive term prescribed under AS 12.55.125(c)(2). Our decision does not preclude the three-judge panel from reaching such a conclusion. We hold only that it would be manifestly unjust in this case to impose a sentence without giving any consideration whatsoever to the evidence of Smith's and King's unusually strong potential for rehabilitation.

The sentence imposed by the superior court is VACATED, and this case is REMANDED to the three-judge sentencing

---

specific conduct centering around the defendant's commission of the offense and do not permit consideration of evidence reflecting favorably on his potential for rehabilitation.

**8.** Individual sentencing judges will be completely precluded from considering relevant non-statutory aggravating or mitigating factors and from making adjustments to a presumptive term in light of such factors only in cases where no statutory factors can be proved. Thus, the need to refer a case to the three-judge panel to consider non-statutory aggravating or mitigating factors will ordinarily arise only in cases where no statutory aggravating or mitigating factors can be established. Conversely, where a statutory aggravating or mitigating factor is established, no need for referral to the three-judge

panel will usually exist. This is because, upon proof of a statutory factor, the individual sentencing judge will be authorized to adjust the presumptive term. In making adjustments, the judge does not view the statutory factor in isolation, but is required to consider the totality of the circumstances in the case in light of the sentencing goals stated in *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). *See Juneby v. State,* 641 P.2d 823, 843 (Alaska App.1982), *modified on other grounds, Juneby v. State,* 665 P.2d 30 (Alaska App.1983). Thus, when a statutory aggravating or mitigating factor has been established, the individual sentencing judge, in applying the *Chaney* criteria to determine the amount by which the presumptive term should be adjusted, will be able to take into account the totality of the circumstances, including any non-statutory aggravating or mitigating factors.

panel, with directions to impose sentence in accordance with AS 12.55.175(c).