Robert W. NEW, Appellant,

v.

STATE of Alaska, Appellee.

No. A–815.

Court of Appeals of Alaska.

Feb. 21, 1986.

Joseph A. Kalamarides, Kalamarides &
MacMillan, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J. and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Robert W. New was convicted after a jury trial of one count of manslaughter, AS 11.41.120(a)(1), one count of assault in the first degree, AS 11.41.200(a)(1), and two counts of assault in the third degree, AS 11.41.220(a)(2). Although New was a first felony offender, he was subject to presumptive sentences of five years for manslaughter and seven years for first-degree assault, since both offenses are class A felonies. See AS 12.55.125(c)(1), (2); AS 11.41.120(b); AS 11.41.200(b). Prior to sentencing, New alleged that one mitigating factor applied to his case; he alternatively requested referral of his case to the three-judge sentencing panel. Superior Court Judge Ralph E. Moody rejected New's proposed mitigating factor and denied his request for referral to the three-judge panel. Judge Moody sentenced New to concurrent terms of five and seven years for the manslaughter and first-degree assault convictions, respectively. The judge suspended the imposition of sentence on the two remaining third-degree assault convictions. New appeals, contending that the trial court improperly excluded expert testimony and that it erred in denying motions for a judgment of acquittal and for a new trial. New also challenges his sentence. He asserts that the trial court erred in rejecting his proposed mitigating factor and in failing to refer the case to the three-judge panel for sentencing. We affirm New's conviction, but remand for sentencing before the three-judge panel.

A review of the facts is necessary for an understanding of New's claims. On May 5, 1984, New was driving a tractor-truck with two belly-dumptrailers from a gravel pit in Wasilla to a construction site in Anchorage. He had a full load of gravel, and the laden weight of his truck was 84,400 pounds. As New drove along Muldoon Road in Anchorage approaching Northern Lights Boulevard, he saw that the traffic light at the intersection of Muldoon and Northern Lights had turned yellow. Without attempting to slow or stop, New sounded his air horn and drove into the intersection at approximately forty to forty-five miles per hour. The light turned red well before New entered the intersection. In the middle of the intersection, New's truck collided with an automobile. The driver of the automobile was killed. There were three passengers in the automobile: one suffered serious injuries; the two others were injured, but not seriously.

After the collision, New informed investigating officers that, as he had crested the hill on Muldoon Road approaching Northern Lights Boulevard, the traffic light at Northern Lights Boulevard came into view for the first time. The light was green at that point. According to New, after seeing the green light, he glanced down at his guages and checked around his truck for traffic. By the time he looked back at the light, it had turned yellow. New said that, from the point where he first saw the yellow light, he could not have stopped his truck. He elected, instead, to go through the intersection.

At trial, the state introduced expert testimony and eyewitness evidence indicating that New was 1,000 feet from the intersection of Muldoon Road and Northern Lights Boulevard when he crested the hill and when the traffic light at that intersection first came into view. According to the state's evidence, he was between 560 and 620 feet from the intersection when he saw the light turn yellow and was still at least 380 feet away when it turned red. The state's expert further testified that he had run tests with New's truck and that the actual stopping distance of the fully-loaded truck, at a speed of forty miles per hour, was 280 feet. According to computations performed by the state's expert, New should have been capable of stopping his

truck one hundred feet from the point of impact, even if he had waited until the light actually turned red before applying his brakes for the first time.

The state bolstered this evidence with testimony of witnesses who had seen a truck, which they later identified as New's drive through a red light at the intersection of Muldoon and DeBarr—the intersection located immediately before Muldoon and Northern Lights. According to these witnesses, New's truck failed to slow down before it ran the red light at Muldoon and DeBarr.

In response to the state's evidence, New advanced a defense based on the theory of "the point of no return." New testified that when he first saw that the light had turned yellow, his truck had already passed the point of no return. In other words, he could no longer have stopped it in time for the intersection. According to New, any attempt at a panic stop would have risked jackknifing the trailers, thereby causing even greater danger. Under the circumstances, New decided that the safest course of action was to sound his air horn and attempt to go through the intersection as quickly as possible. New denied having driven through the red light at the prior intersection, Muldoon and DeBarr.

To support his point of no return theory, New presented an expert in accident reconstruction, Harry Buccilli, who disputed the state's measurements and computations. Buccilli calculated that New's truck was between sixty and three hundred feet away from the intersection when the light turned yellow and that it could not have stopped from that distance. Buccilli concluded that the truck had reached what he called the point of no return. He testified that, at that point, New had no reasonable choice but to run the red light.

New also attempted to call Jerry James, a former truck driver, as an expert witness to validate the concept of the point of no return. New offered to have James testify about the lack of alternatives open to a truck driver who has reached the point of no return. Although he had conducted no

tests and was unfamiliar with New's truck, James was willing to express the opinion that, at approximately three hundred feet from the intersection, an 84,000 pound truck traveling at forty to forty-five miles per hour would be "getting real close to the point of no return or was already [past] it." Upon objection by the state, however, the trial court excluded James's testimony. In his first point on appeal, New argues that this ruling amounted to error.

Evidence Rule 702 permits expert testimony to be presented when it will be helpful to the jury:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under this rule, the trial court is vested with considerable latitude to decide whether an expert should be allowed to testify; the court's decision is reviewable only for an abuse of discretion. *See, e.g., Handley v. State,* 615 P.2d 627, 630 (Alaska 1980); *Gallagher v. State,* 651 P.2d 1185, 1188 (Alaska App.1982).

We perceive no abuse of discretion in the present case. At best, James's testimony would have been cumulative and only marginally relevant. New's point of no return defense was based on a common sense notion, which is readily capable of being understood by lay persons. James's testimony concerning the options open to a truck driver who goes beyond the point of no return would have added little to the understanding that any juror could reasonably be expected to have without the need for expert testimony.

Of course, the question whether New had passed the point of no return when he first saw the yellow light is a considerably more complicated one. Yet James's opinion on this point would have been highly speculative. He had no expertise in accident investigation or reconstruction. He was unfamiliar with the specific facts of

New's case and had not examined or tested New's truck. Nor did he purport to have any particular expertise in determining the stopping distances of trucks generally.

Moreover, the basic thrust of James's proposed testimony was to support the proposition that, once beyond the point of no return, a truck driver had no reasonable choice but to continue through the intersection. However, this testimony in effect assumes the occurrence of unforeseeable events causing the driver to reach the point of no return without negligence. As Judge Moody correctly observed, there was little evidence in this case to indicate that New's attention had been distracted from the traffic light by unforeseeable circumstances. In fact, the reasonableness of New's conduct after reaching the point of no return was not even seriously in issue. To the contrary, the crux of the state's case against New was its evidence showing that New was nowhere near the point of no return when the light turned yellow and that he had not even reached that point when it turned red. Alternatively, the state maintained that, even if New was clearly beyond the point of no return when he first saw the yellow light, it was his own recklessness that placed him in that position. Thus, in light of the theory of prosecution advanced by the state, James's testimony, which focused on the reasonableness of New's conduct after passing the point of no return, could potentially have confused or misled the jury. *Cf. Peterson v. State*, 598 P.2d 94, 95 (Alaska 1979).

During his own testimony, New was accorded a full opportunity to present his point of no return theory to the jury and to explain its application to the facts of his case. New's accident reconstruction expert was also permitted broad latitude to address the theory. He expressly concluded that New's decision to run the red light was reasonable. Under these circumstances, we find that the decision to exclude James's testimony was well within the scope of the trial court's discretion.

New additionally contends that the evidence at trial was insufficient to support a manslaughter conviction and that the trial court therefore erred in denying his motion for a judgment of acquittal. Alternatively, he argues that the court should have granted his motion for a new trial on the ground that the jury's verdict was against the weight of the evidence.

To resolve a claim of insufficient evidence, we are required to view the evidence and the reasonable inferences arising therefrom in the light most favorable to the state. On this basis, we must inquire whether reasonable jurors could differ on the issue of guilt. *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981); *Maloney v. State*, 667 P.2d 1258, 1267 (Alaska App. 1983). New points out that manslaughter and first-degree assault both require recklessness and that recklessness requires proof that the accused consciously disregarded a substantial and unjustifiable risk. *See* AS 11.81.900(a)(3). New argues that he did not disregard the risk of an accident when he decided to drive through the intersection. He contends, rather, that he elected to go through the intersection because it was the only reasonable choice open to him.

New's position basically acknowledges that the jury could have found a substantial risk but denies that it could have found the risk to be unjustifiable. The problem with this analysis is that it presupposes the jury's acceptance of New's point of no return theory. As we have already noted, the state's evidence tended to indicate that New did not reach the point of no return until after the light was already red and that, even if he had, it was due to his own inattention. Viewing this evidence in the light most favorable to the state, we conclude that there was ample basis for rejection of New's defense and that there was ample evidence from which recklessness could be found. New's motion for a judgment of acquittal was therefore properly denied.

A different standard applies to the denial of New's motion for a new trial on the ground that the verdict was against the weight of the evidence. *See Maloney v.*

*State,* 667 P.2d at 1267. In ruling on New's motion, the trial court was authorized to weigh the evidence and determine the credibility of the witnesses. We may interfere with the trial court's decision only if it is unsupported by evidence or was based on an incorrect application of the law. *Maloney,* 667 P.2d at 1267; *Pickens v. State,* 675 P.2d 665, 670 (Alaska App. 1984). In the present case, Judge Moody's decision to deny New's motion was neither arbitrary nor mistaken. That decision must be upheld.

■ New separately advances two arguments with respect to his sentence. First, he claims that Judge Moody erred in rejecting a proposed mitigating factor: that New's conduct was among the least serious within the definition of the offense. AS 12.55.155(d)(9). The fact that New acted recklessly, rather than intentionally or knowingly, is not, in itself, sufficient to establish that his conduct was among the least serious for the offense. *See Walsh v. State,* 677 P.2d 912, 916–17 (Alaska App. 1984). Here, the evidence concerning the offense was in conflict. In evaluating the extent of New's recklessness, Judge Moody was free to adopt a view of the evidence that was unfavorable to New. The evidence, when viewed in this manner, supports Judge Moody's rejection of the proposed mitigating factor.

New's second claim is that his case should have been referred to the three-judge sentencing panel under AS 12.55.-165–12.55.175. This argument is based on the statutory provisions currently governing sentencing for the offenses of manslaughter and first-degree assault.

New's conviction of manslaughter was under AS 11.41.120(a)(1). Under this provision, manslaughter consists of recklessly causing the death of another person. New's conviction of first-degree assault was under AS 11.41.200(a)(1), under which

the offense occurs if the accused, by use of a dangerous instrument, recklessly causes serious physical injury to another person.

Although New's manslaughter and first-degree assault convictions are both class A felonies, they were subject to different presumptive sentencing provisions. For his manslaughter conviction, New was subject to a presumptive term of five years under *See* AS 12.55.125(c)(1), (2). In the absence of plicable to a first-offense class A felony. However, because the first-degree assault conviction involved the use of a dangerous instrument, New was subject to a presumptive term of seven years for that offense. *See* AS 12.55.125(c)(1), (2). In the absence of any statutory aggravating or mitigating factors, Judge Moody was required to impose these presumptive sentences unless he referred New's case to the three-judge sentencing panel. *See Smith v. State,* 711 P.2d 561 (Alaska App., 1985).

New argues that it was manifestly unjust to impose a seven-year presumptive term for his assault conviction when the presumptive term for his manslaughter conviction, a more serious offense, was only five years, and the two crimes stem from precisely the same conduct.[1] Thus, New urges us to hold that a referral to the three-judge panel was required as a matter of law. We believe New's argument is well-taken.

The disparity in presumptive sentences for manslaughter and first-degree assault is attributable to the legislature's decision to exclude manslaughter from AS 12.55.-125(c)(2), which provides for an increased presumptive term when a first-felony offender uses a dangerous instrument in the commission of a class A felony. When presumptive sentencing was originally enacted in 1978, as part of the Revised Alaska Criminal Code, no presumptive term was generally specified for first-offense

---

1. In its brief, the state correctly points out that the imposition of separate sentences for New's offenses is problematical under *Thessen v. State,* 508 P.2d 1192 (Alaska 1973), and *State v. Dunlop,* 696 P.2d 687 (Alaska App.1985), *petition for hearing granted* (Alaska, May 10, 1985). In his

reply brief, however, New asserts his intent to forego this issue. Because we independently conclude that resentencing by the three-judge panel is required, and because New will have a full opportunity to raise this issue on remand, we decline to address it at this time.

convictions. However, under former AS 12.55.125(c)(1), a presumptive sentence of six years was prescribed for first-offense class A felonies when committed by a person who used or carried a firearm. *See Nell v. State*, 642 P.2d 1361, 1367 (Alaska 1982). Manslaughter, although a class A felony, was expressly excluded from this provision. In 1982, the legislature amended AS 12.55.125(c) to provide a five-year first-offense presumptive term for all class A felonies. AS 12.55.125(c)(1). At the same time, the legislature created an increased, seven-year presumptive term for first offense class A felonies committed by a person who carries a dangerous instrument or who possesses a firearm. AS 12.-55.125(c)(2). Manslaughter was not excluded from the generally applicable five-year first-offense presumptive sentence. However, the seven-year increased presumptive sentence for class A felonies involving dangerous instruments expressly excluded manslaughter. Thus, a first offender who has been convicted of manslaughter is currently subject only to the five-year presumptive sentence specified in AS 12.55.-125(c)(1).

In making the original decision to distinguish for presumptive sentencing purposes between first offenders convicted of manslaughter and first-degree assault, the legislature noted that a wide range of conduct was encompassed within the manslaughter provision. Commentary on the Alaska Revised Criminal Code, 1978 Senate Journal Supp. No. 47, at 154 (June 12, 1978). It must be noted, however, that in the original formulation of the revised code, the offense of first-degree assault included only intentional conduct, while manslaughter was defined—as it is now—to include intentional, knowing and reckless conduct. *See* AS 11.41.120; former AS 11.41.200. Thus, in context, the legislation reflected a common sense understanding that manslaughter would typically involve recklessness and that, even though such recklessness resulted in death, in the average case it would be less culpable than intentional conduct constituting a first-degree assault.[2]

Two significant changes have occurred since the legislature first distinguished between manslaughter and first-degree assault for presumptive sentencing purposes. First, the legislature amended the first-degree assault statute by providing that the offense is committed when a "person recklessly causes serious physical injury to another by means of a dangerous instrument." AS 11.41.200(a)(1). Thus, the culpable mental state for first-degree assault is now as broad as that specified for the offense of manslaughter. Second, this court, in *Wettanen v. State*, 656 P.2d 1213 (Alaska App.1983), gave a broad reading to the statutory definition of "dangerous instrument,"[3] construing that term to include any instrument—even a bare hand or an unshod foot—when it is used in a manner that is capable of causing serious physical injury.

As a consequence of the legislature's expansion of the first-degree assault statute, there remains little reason to believe that the typical case of manslaughter will in-

---

**2.** The legislature's view that reckless conduct would generally be less culpable than intentional conduct may, at first glance, appear to be at odds with our holding in *Walsh v. State*, 677 P.2d 912, 916–17 (Alaska App.1984). In *Walsh*, we rejected the contention that a reckless assault is *per se* less serious than an intentional assault, and we declined to hold that an assault is automatically among the least serious within the definition of the offense merely because the defendant acted recklessly, and not intentionally. We perceive no inconsistency between this holding and the views expressed by the legislature in the commentary to the revised criminal code. The thrust of our holding in *Walsh* was that in individual cases reckless assaults might be more culpable than intentional assaults in-

volving comparable injury and that the seriousness of particular offenses should therefore be evaluated on a case-by-case basis. This is not to say that a culpable mental state is irrelevant to an evaluation of the seriousness of an offense or that intentional conduct would not generally be more culpable than reckless conduct that results in similar injuries.

**3.** Alaska Statute 11.81.900(b)(11) specifies that "'dangerous instrument' means any deadly weapon or anything which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury...."

volve less culpable conduct than the typical case of first-degree assault. And as a result of this court's broad definition of "dangerous instrument," the only functional distinction remaining between the offenses of manslaughter and first-degree assault is the degree of harm to the victim—manslaughter being clearly the more serious offense in that regard. As evidenced by the facts of the present case, under the current statutory scheme, virtually every reckless act that simultaneously causes death to one person and serious physical injury to another will be subject to prosecution as a manslaughter, a first-degree assault, or both. In this limited context, to subject the assault to a greater presumptive penalty than the manslaughter appears to be truly anomalous.

It is, of course, possible to argue, as the state has here, that this anomaly should not be cured by referral to the three-judge sentencing panel, because there is no greater reason to believe that the presumptive term for first-degree assault is manifestly too high than there is to believe that the presumptive term for manslaughter is manifestly too low. Yet this argument does not withstand scrutiny.

The root of the legislature's distinction between these two offenses was its assumption that offenders who commit first-degree assault will be guilty of intentional misconduct and will thus, on the average, deserve greater sanctions and less flexibility in sentencing than offenders convicted of manslaughter, who are typically guilty of reckless conduct. Where, as here, a manslaughter and a first-degree assault originate from identical reckless conduct, the original legislative intent clearly establishes that it is the presumptive sentence for assault rather than the presumptive sentence for manslaughter that should be adjusted. In circumstances such as those in the present case, where an individual sentencing judge is precluded by the absence of statutory aggravating and mitigating factors from any adjustment of the presumptive terms, we hold that imposition of the seven-year presumptive term for first-degree assault constitutes a manifest injustice.[4] Thus, the appropriate remedy in this case is referral to the three-judge panel.[5] It is therefore necessary to vacate the sentence imposed by Judge Moody and to remand New's case to the three-judge panel for imposition of a sentence, in accordance with AS 12.55.175.[6]

4. This does not mean that imposition of a sentence of five years or less would be required to prevent manifest injustice in all such cases, since the existence of non-statutory aggravating factors, independently warranting referral to the three-judge panel, could conceivably justify imposition of a sentence exceeding the presumptive five-year term for manslaughter, or, for that matter, even the presumptive seven-year term for class A felonies committed with a dangerous instrument.

We emphasize, moreover, that referral to the three-judge panel may often be unnecessary if statutory aggravating or mitigating factors are found. Where statutory mitigating factors are found, those factors will give the individual sentencing judge discretion to adjust the seven-year presumptive term downward. By the same token, where an individual sentencing judge determines that an aggravating factor exists and that the factor is so significant that it nullifies the mitigating effect caused by the fact that the crime was committed by reckless conduct rather than intentional conduct, that judge may simply elect, in lieu of referral to the three-judge panel, to refrain from making an otherwise appropriate upward adjustment to the presump-

tive term. Finally, where both statutory aggravating and mitigating factors are found, the individual sentencing judge's discretion will also be sufficiently broad to obviate the need for referral. In such cases, a sentence exceeding the presumptive five-year or seven-year terms may be justified if the aggravating factors preponderate significantly over the mitigating factors. *Cf. Smith v. State,* 711 P.2d 561, 571 n. 7 (Alaska App., 1985).

5. We recognize that it might be possible to avoid the need for referral to the three-judge panel by simply construing the increased first-offense presumptive term specified by AS 12.55.-125(c)(2) to be inapplicable in any case where *the defendant's conviction is based on proof of* reckless conduct. New has not argued for such a construction of the statute, however, and we therefore decline to consider the possibility in this case.

6. In addition, we believe it appropriate to direct the attention of the parties and of the three-judge panel to our recent decision in *Smith v. State,* 711 P.2d 561 (Alaska App., 1985). On remand, the three-judge panel may reconsider

The conviction is AFFIRMED. The sentence is VACATED and this case is REMANDED for imposition of sentence by the three-judge panel.

New's total sentence in light of the factors discussed by this court in *Smith*.