Edward J. **KRASOVICH**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–1578.

Court of Appeals of Alaska.

Jan. 30, 1987.

Thomas M. Wardell, Dist. Atty., Kenai, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Edward J. Krasovich was convicted after pleading no contest to a charge of manslaughter, in violation of AS 11.41.120(a)(1). The offense is a class A felony. AS 11.41.-120(b). As a first felony offender, Kraso-vich was subject to a five-year presumptive term. AS 12.55.125(c)(1). Superior Court Judge Charles K. Cranston found one applicable statutory aggravating factor and sentenced Krasovich to an adjusted presumptive term of ten years, with five years suspended. Krasovich appeals his sentence, arguing that no increase in the presumptive term was justified. We affirm.

Krasovich was driving south on the Kenai Spur Highway on the night of October 9, 1985, when his car crossed the centerline and collided head on with another car, killing its driver. An investigation determined that Krasovich had a .188 percent blood alcohol content. Krasovich was charged with manslaughter and eventually entered a plea of no contest to the charge.

Prior to sentencing, the state alleged as an aggravating factor that Krasovich used a dangerous instrument in committing the offense. *See* AS 12.55.155(c)(4). The state argued that Krasovich's car qualified as a dangerous instrument and that, therefore, his use of the car sufficed to establish the aggravating factor. Over objection by Krasovich, Judge Cranston accepted the state's argument and concluded that the aggravating factor had been established. Based solely on this factor, the judge increased Krasovich's sentence from the presumptive term of five years to the adjusted term of ten years with five years suspended.

On appeal, Krasovich does not dispute the finding that his car was a dangerous instrument. However, he maintains that the use of a dangerous instrument is a necessary element of manslaughter and that, for this reason, his use of the car cannot be considered as an aggravating factor.

Under AS 12.55.155(a) and (b), the sentencing court is permitted to increase or decrease a presumptive term upon proof of one or more of the aggravating or mitigating factors specified in AS 12.55.155(c) and (d). *See generally, Juneby v. State*, 641 P.2d 823 (Alaska App.1982), *modified in part*, 665 P.2d 30 (Alaska App.1983). However, AS 12.55.155(e) precludes the use of

an aggravating factor to modify a presumptive term if the factor "is a necessary element of the present offense...." We must therefore begin by considering Krasovich's claim that the use of a dangerous instrument is a necessary element of manslaughter.

Under the revised Alaska criminal code, manslaughter is broadly defined to include any intentional, knowing or reckless conduct that "causes the death of another person under circumstances not amounting to murder in the first or second degree...." AS 11.41.120(a)(1). Use of a dangerous instrument is not expressly stated as a necessary element of the offense.

Nevertheless, the term "dangerous instrument" is given a broad definition in the revised code. The term is defined in AS 11.81.900(b)(11) to include "any deadly weapon or anything which ... is capable of causing death...." In *Wettanen v. State,* 656 P.2d 1213 (Alaska App.1983), we rejected a narrow reading of this statutory definition. We held that even a bare hand or an unshod foot can qualify as a dangerous instrument when used to cause death or serious physical injury.

The broad reading this court gave to the statutory definition of "dangerous instrument" lends plausibility to Krasovich's claim that use of a dangerous instrument is implicitly included as a necessary element of manslaughter. Because, under *Wettanen,* anything capable of causing death or serious physical injury, when so used, qualifies as a "dangerous instrument," a forceful argument can be made that manslaughter, by definition, involves the use of a dangerous instrument. *Cf. New v. State,* 714 P.2d 378, 384 (Alaska App.1986) ("[V]irtually every reckless act that simultaneously causes death to one person and serious physical injury to another will be subject to prosecution as a manslaughter, a first-degree assault [assault with a dangerous instrument], or both.").

There are nevertheless certain circumstances where this might not hold true. In some cases of manslaughter, death might not result from any object or implement at all. For example, even when a death has occurred through natural causes, manslaughter might be established by showing that the accused was under a legal duty to prevent the death but recklessly failed to do so. In other instances, where death has been caused by an instrument, that instrument might not actually have been "used" by the accused. This might be the case, for example, if a person, recklessly stepped into the path of a car, causing it to take evasive action and drive off the edge of a cliff.

■ Although such instances might in actuality arise only rarely, even their hypothetical existence will suffice to illustrate that the use of a dangerous instrument is not necessarily an element of manslaughter. Accordingly, the prohibition in AS 12.-55.155(e) against using an aggravating factor when it is a necessary element of an offense did not technically preclude Judge Cranston, in the present case, from finding an aggravating factor.

■ This conclusion does not end our inquiry, however, for the existence of an aggravating factor does not automatically warrant any increase in a presumptive term. *See Linn v. State,* 658 P.2d 150, 153–54 (Alaska App.1983); *Juneby v. State,* 641 P.2d 823 (Alaska App.1982), *modified in part,* 665 P.2d 30 (Alaska App. 1983). In *Juneby,* we devoted considerable attention to the adjustment of presumptive sentences in light of aggravating and mitigating factors. We said:

> The mere proof of an aggravating or mitigating factor cannot be deemed sufficient, in and of itself, to justify an increase or decrease of a presumptive term. Increases or decreases of presumptive terms should not be the automatic consequence when aggravating or mitigating factors are proved.

*Juneby,* 641 P.2d at 838.

We further emphasized that presumptive sentences were:

> meant by the legislature to be appropriate in the majority of cases—those cases involving conduct that is characteristic of

the offense ... and that falls into the middle-ground between the most serious and least serious extremes for the offense.[1]

*Id.* at 839.

Finally, we pointed out that the importance of a particular aggravating or mitigating factor cannot be viewed in the abstract, but must be evaluated in the context of the specific crime charged. In considering the significance of physical injury to the victim as an aggravating factor for the offense of first-degree sexual assault (the offense involved in *Juneby*), we stated:

> In order to determine the realistic impact that proof of an aggravating or mitigating circumstance should have on adjustment of a presumptive sentence in any given case, we believe it essential to consider not only the specific conduct constituting the aggravating or mitigating factor, but also the nature of the crime charged. With specific reference to the aggravating factor of injury to others, where the crime charged is one that does not ordinarily involve the use of force or violence in its perpetration, the fact that a person sustains injury—even if the injury is relatively slight—assumes considerable importance as an aggravating factor. This is so because cases falling within the middle-range of seriousness for such offenses would involve no violence or injury. Hence, any actual injury would constitute a significant deviation from the norm for the offense; cases involving actual injury would fall significantly nearer to that end of the spectrum that includes the most aggravated conduct for the offense.
>
> By contrast, where the existence of injury is a common element of the crime charged, or where the crime is one typically committed by violent means, the same analysis requires far less weight to be given to relatively minor injuries. It would be appropriate to place significant weight on the aggravating factor of physical injury in such cases only when the injury is so severe that it can realistically be said to deviate significantly from the types of injury characteristic of the offense.

*Id.* at 838.

In this case, although the aggravating factor—use of a dangerous instrument—differs from the factor we considered in *Juneby*, its significance must, as in *Juneby*, be realistically evaluated in light of the specific offense charged. As we have already noted, use of a dangerous instrument is typical in manslaughter cases; indeed, it seems safe to assume that the vast majority of manslaughter cases will involve the use of an object or implement that falls within the broad statutory definition of a dangerous instrument.

Of the various types of dangerous instruments that can conceivably be used in the commission of a manslaughter, perhaps none is as common and characteristic of the offense as the automobile. The large number of drunken driving manslaughter cases decided on appeal in Alaska indicates that such cases comprise one of the most frequently prosecuted forms of manslaughter. *See, e.g.,* cases cited in *Pears v. State,* 698

---

1. We also explained that the role of the presumptive term as a relatively inflexible middle-ground for a given offense is central to the presumptive sentencing scheme:

    > When viewed in the light of the fundamental goals of the new sentencing statutes, the rationale for this relatively inflexible sentencing framework is readily understood. If sentencing courts were permitted, under the presumptive sentencing scheme, to deviate routinely and substantially from the presumptive terms prescribed by law, the fundamental purposes of eliminating disparity and establishing reasonable uniformity in sentencing would be completely undermined. Unless the provisions of AS 12.55.155 are adhered to strictly, and unless a measured and restrained approach is taken in the adjustment of presumptive sentences for both aggravating and mitigating factors, then the prospect of attaining the statutory goal of uniform treatment for similarly situated offenders would quickly be eroded, the potential for irrational disparity in sentencing would threaten to become reality, and the revised code's carefully fashioned system of escalating penalties for repeat offenders would be rendered utterly ineffective.

    *Juneby,* 641 P.2d at 833.

P.2d 1198, 1203 (Alaska 1985). Furthermore, such cases appear to have served as the paradigm for manslaughter when the five-year presumptive sentence for that offense was established by the legislature. *See generally New v. State,* 714 P.2d at 382–84.

■ Since the use of dangerous instruments is characteristic of manslaughter and the automobile is a dangerous instrument characteristically used in committing the offense, it would be unrealistic to conclude that the use of an automobile is, in and of itself, a sufficient basis for increasing the presumptive term.

Our inquiry must therefore shift to the particular circumstances of the case before us; we must determine whether there was anything uncharacteristically serious about the manner or circumstances in which Krasovich used his automobile.[2] In the present case, it is notable that Krasovich had previously been convicted of negligent homicide. The prior offense occurred in 1968 and involved an incident in which Krasovich had been drinking and drove his car off the road, killing one of his passengers.

■ We are mindful that this offense occurred more than sixteen years before Krasovich's current crime, that Krasovich received a suspended imposition of sentence, and that his conviction was eventually set aside. While these factors precluded the treatment of Krasovich as a second felony offender for presumptive sentencing purposes, they did not render the prior conviction irrelevant for all sentencing purposes; to the extent Krasovich's involvement in the prior homicide was relevant to the adjustment of his presumptive term, the sentencing court was not foreclosed from considering it.[3]

■ We believe that the prior incident, when viewed in the context of Krasovich's current conviction, is particularly significant. By virtue of his involvement in the prior homicide, Krasovich personally experienced the tremendous danger posed by an automobile when it is driven by a person who has consumed intoxicating liquor, and he clearly became aware of the grave legal consequences that can flow from such conduct.

In light of his prior experience, Krasovich's decision to operate a motor vehicle in this case after having consumed enough intoxicating liquor to raise his blood alcohol level to almost twice the legal maximum is exceptionally reckless. Krasovich's back-

2. Although we have held that the totality of the circumstances in each case must be considered in deciding the extent to which a presumptive term should actually be adjusted in light of an aggravating or mitigating factor, we have cautioned that these circumstances are relevant only insofar as they bear on the specific aggravating or mitigating factor for which the adjustment is to be made:

A relevant consideration in all presumptive sentencing cases is that the existence of aggravating or mitigating factors requires adjustment of the presumptive term in light of the specific factors proved. Proof of an aggravating or mitigating factor does not, however, warrant wholesale abandonment of the presumptive sentencing structure and application of the *Chaney* [*State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970)] criteria to the totality of the circumstances of the case as if a presumptive sentence had never applied. As we said in the original *Juneby* opinion:

When applied to the adjustment of a presumptive sentence, ... the *Chaney* analysis should not be broadened into a consideration of all circumstances of the offense, as if the sentence were being imposed anew, without regard for the presumptive term. Instead, consideration of the *Chaney* criteria should focus specifically on the aggravating and mitigating conduct in the particular case. The presumptive term should remain as the starting point of the analysis, and the *Chaney* criteria should be employed for the limited purpose of determining the extent to which the totality of the aggravating and mitigating factors will justify deviation from the presumptive term.

*Juneby v. State,* 665 P.2d 30, 37 (Alaska App. 1983) (opinion on rehearing) (quoting *Juneby v. State,* 641 P.2d at 835 n. 21).

3. We have frequently held that a prior felony conviction which does not qualify as a predicate for presumptive sentencing may nevertheless be considered in determining the extent to which a presumptive term should be adjusted. *See Larson v. State,* 688 P.2d 592, 597–98 (Alaska App. 1984); *Garroutte v. State,* 683 P.2d 262, 268–69 (Alaska App.1984); *Walsh v. State,* 677 P.2d 912, 916 n. 2 (Alaska App.1984); *Lee v. State,* 673 P.2d 892, 895 (Alaska App.1983) (citing earlier cases).

ground makes his willingness to drive an automobile while intoxicated uncharacteristically serious. For this reason, we conclude that the sentencing court's decision to add five years of suspended imprisonment to the statutorily prescribed presumptive term was not clearly mistaken.[4]

 In reaching this conclusion, we emphasize that reliance on the defendant's use of a dangerous instrument will justify an actual increase in the presumptive term for manslaughter only in exceptional cases. Some instruments are inherently dangerous because they are specifically designed for use as weapons. Alaska Statute 11.81.-900(b)(13) defines "deadly weapon" to include: "[a]ny firearm, or anything designed for and capable of causing death or serious physical injury, including a knife, an axe, a club, metal knuckles, or an explosive...." In our view, when a deadly weapon is employed recklessly and death results, an actual increase in the presumptive term for manslaughter may be appropriate if warranted by the circumstances of the individual case.[5] Furthermore, even when the instrument used was not a "deadly weapon," as defined in AS 11.81.-900(b)(13), we do not rule out the possibility that an increase will from time to time be justified, as in this case, by unusual circumstances.

On the other hand, many useful, ordinarily innocuous objects are capable of causing death when used recklessly. When death results from the reckless use of such an object for its ordinary purpose, no actual adjustment of the presumptive term will usually be justified, because the fact that a "dangerous instrument" was used will provide no realistic basis for concluding that the defendant's conduct was uncharacteristically serious.

The sentence imposed by the superior court is AFFIRMED.

---

**4.** Our use of the clearly mistaken standard of review on this issue is consistent with our holding on rehearing in *Juneby v. State,* 665 P.2d 30, 36–37 (Alaska App.1983).

**5.** Again, however, we caution that the appropriateness of any actual increase must be determined on a case-by-case basis, by reference to the norm of conduct for the offense, that is, conduct which can be considered characteristic of manslaughter offenses generally. In this re-

gard, for example, manslaughter resulting from the reckless discharge of a rifle by a member of a hunting party might be considered characteristic of manslaughter and not deserving of any actual increase of the presumptive term, despite the use of a deadly weapon. In contrast, a manslaughter resulting from the reckless discharge of a handgun in a crowded apartment during a party might be deemed to involve conduct that is unusually serious and warrants a substantial increase.